520 So.2d 761 (1987)
Sandra Marie GREEN, et al., Plaintiffs-Appellants,
v.
Dr. Henry J. DUPRE, et al., Defendants-Appellees.
No. 86-921.
Court of Appeal of Louisiana, Third Circuit.
October 7, 1987.
On Rehearing January 4, 1988.
Writ Denied February 26, 1988.
*762 Owen M. Goudelocke, Baton Rouge, and Joseph R. Joy and Erlene Stewart, Lafayette, for plaintiffs-appellants.
*763 Durio, McGoffin & Stagg, Gary McGoffin, Lafayette, Soileau & Coreil, C. Brent Coreil, Ville Platte, for defendants-appellees.
Before STOKER and YELVERTON, JJ., and CULPEPPER, J. Pro Tem.[*]
WILLIAM A. CULPEPPER, Judge Pro Tem.
Plaintiff filed suit individually and on behalf of her minor daughter against the minor daughter's treating physician and his medical malpractice insurance carrier for injuries sustained by the minor daughter as a result of an infection caused by a ruptured appendix. The suit alleged that the defendant, who had treated the plaintiff's minor daughter for a viral infection in August 1983 prior to the rupturing of her appendix, was liable in negligence for her injuries as a result of his failure to appropriately care for the patient. Following trial on the merits a jury found the defendant not at fault. Judgment was rendered dismissing plaintiff's claim. Plaintiff appeals. We affirm.

FACTS
On Saturday, August 13, 1983 Erricka Chenae Green (hereinafter Erricka) began experiencing stomach pains. The next evening Erricka complained of more intense stomach pains and became nauseated. She felt worse Monday morning, August 15, 1983, when she was seen by her family physician, Dr. Henry Dupre.
At Dr. Dupre's office Erricka threw up twice prior to being examined. After a wait of approximately 45 minutes Erricka was escorted with her mother to an examination room, where a nurse checked her temperature and blood pressure. Erricka's mother testified at trial that, after asking her if she had hospital insurance, Dr. Dupre began examining Erricka. She testified that Dr. Dupre asked when the pains began, palpated Erricka's stomach area and performed blood and urine tests. After the tests were completed Dr. Dupre advised Erricka's mother that she had a stomach virus which would "probably last about a week or so." He also ordered a shot and advised that Erricka was dehydrated and should be given fluids, "particularly Gator Aid [sic]."
Erricka's mother also testified that Dr. Dupre told her that "if there was no improvement in Erricka's condition within 24 hours that I may have to take her to the hospital ..." for IV injection due to dehydration. Pat Fontenot, a nurse employed by Dr. Dupre, testified that she remembered Dr. Dupre telling Erricka's mother that Erricka "needed to be admitted to the hospital within 12 to 24 hours." A patient examination chart which was used during the examination and which was read into evidence contained the following information:
"Acute viral gastroenteritis, mild dehydration, abdominal pain, generalized ... Recommend admit for IV fluid and workup. Patient without insurance. Recommend Lafayette Charity, UMC, if no improvement within 24 hours, and probably should go for evaluation now."
After the examination Dr. Dupre prescribed Tylenol and suppositories for the nausea and vomiting. After paying for the doctor's visit, Erricka's mother took her home. That evening Erricka stopped throwing up and began drinking Gatorade in small quantities.
On Tuesday, August 16, 1983, Erricka improved somewhat, being able to drink broth and Gatorade.
On Wednesday evening, August 17, 1983, Erricka developed diarrhea and on Thursday morning, Erricka's mother called Dr. Dupre's office. Erricka's mother was unable to speak to Dr. Dupre but explained Erricka's symptoms of pain, severe diarrhea, and stomach cramps to one of Dr. Dupre's employees. One of Dr. Dupre's employees called Erricka's mother back shortly thereafter and advised her that Dr. Dupre had prescribed some medication, Lomotil, for the diarrhea, cramping and pain. Erricka's mother picked up the prescription. On Friday, August 19, 1983, Erricka's *764 diarrhea became less severe and completely stopped on Saturday.
During the following week, from Saturday, August 20, 1983 through Friday, August 26, 1983 Erricka's diarrhea and vomiting had stopped and she appeared to be recovering from her illness. Although she stayed in her house most of the week, she was able to attend her scheduled one-half days of school on Thursday and Friday, August 25 and 26, 1983.
On Friday, August 26, 1983 Erricka was sitting in her school classroom when she again began experiencing abdominal pains. She testified that the location of the pain was approximately 2 inches lower than the location of her previous pains.
On Saturday, August 27, 1983, Erricka told her mother that she was beginning to feel bad. Further, she testified she showed her mother what she described as a knot, or lump, in her stomach. Erricka's mother testified that she attempted to contact Dr. Dupre at his home but was unsuccessful. Erricka's mother did not make any further attempts to seek medical assistance at this time.
On Sunday morning, August 28th, Erricka felt better than she had the day before and went to church with her family. During church services she began to feel ill. According to her testimony, her pain was now much more intense than the pain she had previously experienced and the pain was located much lower in her abdomen. Erricka's mother took her to another doctor, Dr. Carlton, who examined Erricka and wrote out a note for Erricka's parents to take her to Huey P. Long Hospital in Pineville. Tests and examinations were performed for approximately eight hours at the hospital.
On Monday, August 29th, exploratory surgery was performed. It was found that Erricka's appendix had ruptured and resulted in an infection of her abdominal cavity. This infection had spread to Erricka's female organs, necessitating removal of one of her ovaries and causing an infection of her digestive tract and problems with her kidneys. Erricka was placed in intensive care for approximately one week and was in the hospital for a total of three to four weeks.
Since the above events occurring in 1983, Erricka has been in the hospital several times, once in 1984 for infected lymph glands, once in 1985 for an infection of her other ovary, which resulted in removal of the ovary, and once in 1986 for a urinary tract infection. No evidence was presented establishing that these subsequent infections resulted from the events of August 1983.
Erricka's mother filed suit on April 16, 1986 for the medical malpractice of Dr. Dupre which allegedly resulted in damages sustained by Erricka in the amount of One Million Fifty Thousand and No/100 ($1,050,000.00) Dollars. The acts and omissions of Dr. Dupre alleged as constituting negligence and causing the infection and resulting problems of Erricka were set forth as follows:
"1. Failing to utilize known medical techniques, procedures and medication to prevent and/or control the onset of the ruptured appendix and/or abdominal infection;
2. Failure to properly monitor the condition of Erricka Chenae Green and to stabilize same;
3. The medication, observation and procedures utilized were below the normal standard of care practiced in Ville Platte, Louisiana and other hospitals around the parish, state and United States;
4. The medication, observation and procedures utilized were below the degree of care ordinarily exercised by a physician licensed to practice in the State of Louisiana and/or actively practicing in a similar community, locale or within the United States under similar circumstances within the involved medical specialty;
5. Failed to call a specialist immediately to aid in medical treatment rather than call for medication without observation;
6. The manner and treatment in which Erricka Chenae Green was given was below the degree of skill and care ordinarily practiced by a physician within *765 the same involved practice and/or specialty; and
7. Defendant either lacked the sufficient degree of knowledge or skill or failed to use reasonable care and diligence along with his best judgment in the application of that skill."
Plaintiff also alleged that the doctrine of res ipsa loquitur was applicable, since Erricka's ruptured appendix and resulting infection and surgery would not have occurred in the absence of negligence, and since the ruptured appendix and infection occurred while Erricka was under the care, treatment and/or control of Dr. Dupre.
In addition to the facts as set forth above, expert witnesses testified as to standard medical procedures involved in the charting, diagnosis, treatment, medication and hospital admission procedures for patients. These standard procedures were compared to the procedures employed by Dr. Dupre in the treatment of Erricka in order for the jury to determine whether or not Dr. Dupre's conduct fell below the normal standard of care ordinarily exercised by physicians practicing in a similar community or locale.[1]
During presentation of plaintiff's case the video deposition of plaintiff's expert witness, Dr. Gary Douovitz, was shown to the jury in lieu of his appearance at trial; however, the video deposition was not provided this court as part of the record on appeal and is therefore not available for our consideration on appeal.
Plaintiff also called as an expert witness Dr. Gordon S. Paulson, a practicing physician specializing in internal medicine from St. Joseph, Missouri. Dr. Paulson testified that after examining the demographic makeup of the Ville Platte-Evangeline Parish community, the community in which Dr. Dupre's practice was located and of which the plaintiff was a member, he concluded the local community standard for practicing physicians in the Ville Platte area for treatment of gastroenteritis and appendicitis is very high, and is similar to the standard in the St. Joseph, Missouri community. Dr. Paulson testified that he believed that Erricka's appendix had ruptured several days before the abscess, or lump, was found in her abdomen on Saturday, August 20, 1983. However, Dr. Paulson was unable to say that, more probably than not, Erricka's symptoms exhibited on the two days during which Erricka's mother spoke with Dr. Dupre's office established that Erricka suffered from a perforated, or ruptured appendix at that time. Despite Dr. Paulson's inability to say that it was more probable than not that Erricka showed symptoms of or in fact suffered from appendicitis on or before August 18, 1983, Dr. Paulson did feel that a patient diagnosed with gastroenteritis and suffering from diarrhea three days after the initial examination should be further examined to rule out the possibility of appendicitis. Dr. Paulson also believed that Dr. Dupre's records of Erricka's medical history and information were incomplete, and that Dr. Dupre should have obtained a surgical consultation after the examination of August 15, 1983. Dr. Paulson concluded that although Dr. Dupre possessed the required degree of skill necessary for the proper treatment and diagnosis of gastroenteritis and appendicitis, he failed to exercise that degree of care in the treatment and diagnosis of Erricka and that Dr. Dupre's failure to exercise this necessary degree of care proximately resulted in Erricka's injuries.
In rebuttal of Dr. Paulson's opinion that Dr. Dupre failed to exercise the necessary degree of care in the treatment and diagnosis of Erricka, Dr. Charles Fontenot, a general practitioner from Evangeline Parish testifying on behalf of Dr. Dupre, testified that he found Dr. Dupre's records concerning treatment and diagnosis of Erricka to be very adequate. Dr. Fontenot further testified that family practitioners generally don't record all information and findings *766 concerning a patient and usually record only pertinent, abnormal findings. Dr. Fontenot also testified that he believed Dr. Dupre adequately considered the possibility of appendicitis during his examination of Erricka on August 15, 1983, but that such a possibility was reasonably ruled out due to Erricka's blood test results and other findings, and that Dr. Dupre's recommendation that Erricka go to the hospital for IV fluids and follow up care amounted to proper follow up care for a child with acute viral gastroenteritis. Finally, Dr. Fontenot testified that he felt sure that Erricka did not have appendicitis on August 15, 1983, that he would have treated Erricka for acute viral gastroenteritis under the same circumstances, and that, in his opinion, Erricka's appendix ruptured within three days of her being presented at the hospital on August 28, 1983. Plaintiff's counsel objected to the testimony of Dr. Fontenot on the grounds that, since the doctor was a physician practicing in the same community as the defendant, Dr. Dupre, and not in a similar community, he should not be allowed to testify.
Plaintiff's counsel examined several other witnesses both on direct and on cross as to the propriety of Dr. Dupre's failure to subsequently examine Erricka or to refer her either to a specialist or to a local hospital for further treatment. It was also repeatedly emphasized throughout trial that when Erricka's mother called Dr. Dupre's office on August 18, 1983 and the Lomotil prescription was issued to Erricka, Dr. Dupre's staff failed to enter notes concerning this day's events on Erricka's medical records and, in fact, that the records were not updated until sometime after August 18, 1983. This was apparently offered not only to show that Dr. Dupre's records were inadequate but also to show that Dr. Dupre knew that his records were inadequate and attempted to correct the inadequacy after Erricka's injury. However, Dr. Dupre's secretary, Mrs. Juanita Tremie, testified that it was typical office procedure for information to be written down on notepads and attached to a patient's record, only to be written into the record at a later date, and that this was the procedure employed to record information received concerning Erricka's condition on August 18, 1983.
During trial two of the original jurors were excused from duty; the first juror was excused without objection from either plaintiff or defendant in this case. A second juror was excused during the fifth day of trial when it was found that he had brought a medical reference book from his home into the jury room. After being questioned by both plaintiff and defense counsel and by the trial judge, the judge excused the juror over plaintiff counsel's objection. Plaintiff counsel also objected to the trial court's failure to instruct the jury with respect to the doctrine of res ipsa loquitur based on Dr. Dupre's sole and exclusive treatment of Erricka.
Plaintiff appeals assigning the following errors:
(1) The trial court's denial of plaintiff's motion for judgment notwithstanding the verdict and in the alternative motion for new trial;
(2) The jury, as constituted and seated, was not representative of a fair cross-section of the community and did not afford plaintiff a fair and impartial hearing based upon the evidence and the law;
(3) The jury ignored the evidence presented and rendered a verdict based upon factors other than the evidence and the law, and specifically rendered a verdict to which it was predisposed after only one day of testimony;
(4) The jury's consideration of the testimony of plaintiff's expert, Dr. Fontenot, which is prohibited by statute and jurisprudence.
Plaintiff has on appeal filed both an original and a supplemental brief in support of its arguments on appeal. Defendant has filed motions to strike both plaintiff's original and supplemental briefs based on noncompliance with several of the Uniform Rules-Courts of Appeal.

MOTION TO STRIKE
Defendant filed motions to strike plaintiff's original and supplemental briefs on appeal. One basis for defendant's motion *767 to strike plaintiff's original brief is that it fails to give accurate citation of the pages of the record and the authorities cited. Rule 2-12.4, Uniform Rules-Courts of Appeal. Finding plaintiff's original brief to be in substantial compliance with Rule 2-12.4, we hold this argument is without merit. Defendant also urges that plaintiff's brief makes reference to matters which are outside the record on appeal and therefore not available for our consideration on appeal. This argument will be discussed, infra.
Defendant contends that plaintiff's supplemental brief should also be stricken in that: (1) it was untimely filed, and (2) it raises new issues which were not urged in plaintiff's original brief. Plaintiff's supplemental brief does not set forth new issues for consideration and merely makes reference to specific portions of the record, which has now been thoroughly examined by this court, and therefore is in no way prejudicial to defendant. Defendant's motions to strike are therefore denied.

JURY
Plaintiff contends that the jury, as constituted and seated, was not representative of a fair cross-section of the community and did not afford plaintiff a fair and impartial hearing based upon the evidence and the law. Plaintiff also contends that the trial court's dismissal of two jurors during trial resulted in prejudice to plaintiff. These arguments are without merit, since plaintiff did not timely object to the manner of selection or the drawing of the jury as required by La.R.S. 13:3052, nor has plaintiff shown, nor do we find from the record, that plaintiff was in any way prejudiced by the trial court's dismissal of the two jurors. The first juror was dismissed without objection from either plaintiff or defendant. The second juror was dismissed by the trial court, after both plaintiff and defendant had an opportunity to question the juror, when the trial court discovered that the juror had read and brought into the jury room a medical reference book. The trial court excused the second juror after questioning, finding sufficient potential for prejudice. Absent manifest error, we will not disturb this finding.
Plaintiff also contends that the fact that the jury deliberated less than 30 minutes before returning a verdict in favor of defendant indicates jury prejudice. Defendant admits that the jury deliberated less than 30 minutes, while correctly pointing out that brevity of a jury's deliberation is not in and of itself indicative of improper behavior, and that improper jury behavior which is of such a grevious nature as to preclude the impartial administration of justice is determined by the facts and circumstances of the particular case. Bossier v. Desoto General Hosp., 442 So.2d 485 (La.App. 2 Cir.1983), writ den., 443 So.2d 1122 (La.1984).
Plaintiff also attempts to show jury prejudice by pointing to two comments allegedly made by jurors after the verdict was rendered. The first comment which plaintiff refers to was allegedly made by a juror after trial to the effect that the jury had "made up it's [sic] mind" on its verdict on the first day of trial. A second comment was reportedly made by the same juror that the jury wanted to "somehow or other reprimand" Dr. Dupre for what he had done and that the jury felt that Erricka's mother, Mrs. Green, should have done more with respect to caring for Erricka. As to the statement that the jury had made up its mind on the first day of trial, it is unknown whether this statement was based on statements by other jurors, whether this was merely the impression of the juror making the statement or whether in fact the statement was made. Further, this court may not consider either statement as it does not form part of the record on appeal. Barnett v. Barnett, 477 So.2d 1289 (La.App. 3 Cir.1985). Further, even if forming part of the record, such statements are generally inadmissible to impeach a jury's verdict. Conner v. Florida Farm Bureau Cas. Ins., 446 So.2d 383 (La.App. 3 Cir.1984); Wright v. State Farm Mut. Auto. Ins., 445 So.2d 206 (La. App. 3 Cir.1984). This assignment of error is therefore without merit.

*768 MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT AND IN THE ALTERNATIVE MOTION FOR NEW TRIAL
Plaintiff contends that the trial court erred in denying her motion for judgment notwithstanding the verdict and in the alternative for new trial. She argues that the jury ignored the evidence presented and rendered a verdict based on factors other than the law. We combine these assignments of error for purposes of discussion.
"The purpose of the directed verdict is that "it serves judicial efficiency by allowing the judge to conclude the litigation (in a jury trial) if the facts and inferences are so overwhelmingly in favor of the moving party that the court believes that reasonable men could not arrive at a contrary verdict." ...
* * * * * *
On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury."
LSA-C.C.P. Art. 1810; Campbell v. Mouton, 373 So.2d 237 (La.App. 3 Cir.1979).
Plaintiff correctly points out that the standard to be used by a trial court as to the propriety of a directed verdict differs from the standard to be employed in determining whether a new trial should be granted in that, in a motion for new trial, the trial judge is free to evaluate and weigh the evidence and make credibility determinations without favoring either party. Nevertheless, it is the duty of this court to decide whether the trial court's denial of both the judgment notwithstanding the verdict and the motion for new trial amount to an abuse of discretion in light of the record now before us. Pellerin v. Tudor Const. Co., 414 So.2d 403 (La.App. 1 Cir.1982), writ den., 420 So.2d 455 (La. 1982), aff'd, 479 So.2d 498 (La.App. 1 Cir. 1985), U.S. cert. den., ___ U.S. ___, 107 S.Ct. 96, 93 L.Ed.2d 47 (1986).
Plaintiff alleges that Dr. Dupre failed to utilize known medical techniques, procedures and medication to prevent or control plaintiff's ruptured appendix and resulting infection. Yet, the record is devoid of evidence supporting this allegation. To the contrary, the evidence strongly supports the theory that Dr. Dupre could not have anticipated Erricka's appendicitis based on the information which he gathered during both Erricka's office visit on August 15, 1983 and the telephone call which Erricka's mother placed to Dr. Dupre's office on August 18, 1983. The lab tests performed on Erricka in Dr. Dupre's office on August 15, 1983 showed that she had a low white blood cell count, which is indicative of a viral infection, such as gastroenteritis. Experts at trial testified that, normally with a bacterial infection, such as appendicitis, a patient's white blood cell count will be higher than normal. Thus Erricka's white blood cell count on August 15, 1983 was typical of a patient with gastroenteritis and atypical of a patient with appendicitis. Further, Erricka's symptoms on August 15th were also typical of gastroenteritis: abdominal pains, cramping and vomiting. The fact that Erricka's symptoms were indicative of gastroenteritis was uncontested based on our reading of the record. Further, Dr. Fontenot, defendant's expert, testified that Dr. Dupre had considered but had properly ruled out the possibility of appendicitis based upon Erricka's blood test results and her other reported symptoms. It is virtually uncontroverted that Dr. Dupre made a proper diagnosis of gastroenteritis on August 18, 1983. Further, Dr. Fontenot indicated that information taken by Dr. Dupre's office on August 18th also did not indicate appendicitis, and none of plaintiff's testifying experts indicated that any of Erricka's symptoms on August 18, 1983 indicated appendicitis.
Plaintiff also contends that Dr. Dupre's methods of record keeping were inadequate, constituted negligence and caused Erricka's injuries. During trial plaintiff called a nursing supervisor who was accepted as an expert witness in charting *769 and who testified that Dr. Dupre's methods employed for keeping Erricka's records were, in her opinion, a deviation from adequate standards for charting. However, defendant's expert, Dr. Fontenot, testified that, in his opinion, Dr. Dupre's records concerning Erricka were very adequate and were better than records usually kept in his office. Further, the record does not reveal any information concerning Erricka's condition on either August 15th or August 18th, which would or should have altered Dr. Dupre's diagnosis of gastroenteritis, if in fact Dr. Dupre's record keeping concerning Erricka was substandard. There is, therefore, no evidence indicating that any acts or omissions concerning record keeping resulted in misdiagnosis or in any way were the cause of Erricka's perforated appendix and resulting infection. The jury would therefore not have been in error in finding that Dr. Dupre's records concerning Erricka were adequate or in finding that any inadequacies in the records did not result in injuries to Erricka.
Plaintiff also contends that Dr. Dupre failed to properly monitor and stabilize Erricka's condition, specifically, that Dr. Dupre abandoned Erricka when he failed to personally call her back or physically examine her on August 18, 1983 and prescribed Lomotil for her symptoms. Plaintiff also maintains that it was improper for Dr. Dupre not to directly transfer Erricka to a hospital on August 15, 1983. As discussed above, it is undisputed that Erricka was reasonably diagnosed as having a viral infection and not appendicitis on August 15 and 18, 1983. Although even Dr. Dupre admitted that he would have rather physically examined Erricka than to prescribe medication over the telephone, no evidence in the record indicates that Erricka was exhibiting symptoms of appendicitis on August 18th. It is therefore improper for this court to substitute its judgment for that of the jury and determine that, had Dr. Dupre physically examined Erricka on August 18th, appendicitis would have been detected. Rather, Erricka's symptoms prior to or on August 18th indicate gastroenteritis rather than appendicitis, as testified to by medical experts of both plaintiff and defendant. It is also noted that Dr. Dupre did refer Erricka to University Medical Center in Lafayette for treatment for dehydration if she did not begin to improve, but that Erricka did begin to improve shortly after her August 15, 1983 visit with Dr. Dupre.
Regarding her contention that Dr. Dupre's abandonment of Erricka resulted in his failure to properly diagnose her condition of appendicitis and in her resulting injuries, plaintiff would impose a continuing duty on Dr. Dupre to monitor Erricka's physical condition until she was entirely recovered. While it is the opinion of plaintiff's expert that Dr. Dupre failed to adequately follow up on Erricka after her initial visit of August 15, 1983, and that his failure proximately resulted in plaintiff's injuries, it appears from the record that Erricka was not exhibiting symptoms of appendicitis, but rather of gastroenteritis, on that date and on August 18, 1983, the last time Erricka's mother contacted Dr. Dupre's office. A reasonable interpretation of the evidence is that, if Dr. Dupre had seen Erricka on August 18, 1983, his reasonable diagnosis would have been gastroenteritis, not appendicitis. Dr. Fontenot, defendant's expert, testified that, in his opinion, Erricka's appendix ruptured within three days of her being presented at Huey P. Long Hospital. Erricka was not presented at the hospital until August 28, 1983, almost two weeks after Dr. Dupre's examination took place. As to whether the degree of care ordinarily exercised by a general practitioner in a similar community under similar circumstances required Dr. Dupre to follow up on Erricka's condition after August 18, 1983 and whether such follow up would have resulted in diagnosis of Erricka's appendicitis, thereby preventing her resulting abdominal infection and complications, this is a matter which, under the evidence, is subject to reasonable interpretation by a jury. LSA-R.S. 9:2794 A(1). When faced with conflicting testimony as to the duty of appropriate standard of care of a physician to his patient, the fact finder must be given a great deal of discretion in the evaluation of expert witnesses. Such *770 evaluations may not be reversed on appeal absent manifest error. Simar v. Hartford Fire Ins. Co., 483 So.2d 196 (La.App. 3 Cir.1986), writ den., 485 So.2d 65 (La.1986). Since we find that the record adequately supports the jury's finding that the actions or inactions of Dr. Dupre did not cause Erricka's injuries, the trial court was within its discretion in denying plaintiff's motion seeking judgment notwithstanding the verdict and alternatively for a new trial. Accordingly, plaintiff's assignments of error number one and three are without merit.
Plaintiff also contends that the trial court committed clear error in failing to instruct the jury on a charge of res ipsa loquitur. The requisite charge by plaintiff was deferred by the trial court and later denied when the court denied all special jury charges. We find that the trial court properly denied plaintiff's requested jury charge on the doctrine of res ipsa loquitur. The doctrine is only applicable if the body of proof establishes or suggests that the alleged negligence of a defendant excludes every other reasonable hypothesis as to the cause of the plaintiff's injury, such that the negligence of the defendant is the most plausible explanation of the injury. Paul v. St. Paul Fire & Marine Ins. Co., 430 So.2d 285 (La.App. 3 Cir.1983). The evidence here did not exclude other reasonable causes. The trial court's denial of a charge on res ipsa was proper.

"SIMILAR COMMUNITY" STANDARD
Plaintiff contends in her last assignment of error, under a narrow interpretation of La.R.S. 9:2794 A(1), that defendant's testifying medical expert, Dr. Charles Fontenot, should not have been allowed to testify as to the degree of ordinary care exercised by practicing physicians in a community similar to that in which the defendant, Dr. Dupre, practiced since Dr. Fontenot practiced in the same community as the community in which Dr. Dupre practiced.
La.R.S. 9:2794 A(1) establishes that the plaintiff has the burden of proving the degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians licensed to practice in the State of Louisiana, and actively practicing in a similar community or locale and under similar circumstances. LSA-R.S. 9:2794 A(1); Matthews v. La. State Univ. Medical Center, 467 So.2d 1238 (La.App. 2 Cir. 1985).
This court cannot accept plaintiff's restricted interpretation of the statute. The language in the statute was amended in Acts. 1979, No. 545 § 1 to substitute "in a similar" for "in the same." Presumably, this addition was made to ease the plaintiff's burden of proving the ordinary standard of care in a malpractice defendant's community so as to permit the plaintiff to merely establish the requisite standard of care in a similar community or locale. We do not interpret this statute to disallow defendant's medical expert from testifying as to the standard of care in defendant's own community.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are taxed to the plaintiff-appellant.
AFFIRMED.

ON REHEARING
PER CURIAM.
We granted a rehearing for the limited purpose of considering the video taped deposition of Dr. Gary Donovitz. We stated in our original opinion at page 6 that the video deposition of Dr. Donovitz was not part of the record on appeal and was therefore not considered by us. In an application for rehearing, plaintiff requested the court to locate the video deposition and consider it. We have now done so.
In his video deposition, which was viewed by the jury in lieu of his live testimony, Dr. Donovitz states his impressive qualifications in the specialities of obstetrics and gynecology. He was chief resident physician at Huey P. Long Memorial Hospital in Pineville on August 28, 1983 when Erricka Green was brought in with complaints of severe abdominal pain. Following tests and examinations, Dr. Donovitz performed *771 exploratory surgery the next day, August 29, 1983, and found the ruptured appendix, which is the subject of this litigation. Dr. Donovitz expressed the opinion that Erricka probably had appendicitis when she was initially seen by the defendant, Dr. Dupre, on August 15, 1983. Although he found no fault with Dr. Dupre's initial diagnosis of gastroenteritis, he thought that Dr. Dupre should have considered appendicitis as a differential diagnosis on August 15 and should have treated and observed Erricka for both conditions. It was the opinion of Dr. Donovitz that it was this failure to properly follow the patient which eventually caused the ruptured appendix.
In our original opinion we discuss in detail the medical history from the time of Dr. Dupre's initial examination on August 15 until the surgery on August 29. As we stated in our original opinion, one of the most significant symptoms supporting Dr. Dupre's diagnosis of gastroenteritis on August 15 was the blood test result which showed the white blood cell count was low, which, according to all of the experts, was indicative of a viral infection, such as gastroenteritis. All of the experts agree that normally with a bacterial infection, such as appendicitis, a patient's white blood cell count will be higher than normal. Dr. Donovitz was of the opinion that Dr. Dupre should have continued to see Erricka and make additional white blood cell tests.
In our original opinion we reviewed the testimony of defendant's expert, Dr. Fontenot, who expressed the opinion that the diagnosis and treatment by Dr. Dupre was within the degree of care ordinarily exercised by a general practitioner in the community under similar circumstances, particularly in view of the results of the white blood cell count on August 15.
In the final analysis, this case presents a close question of fact as to whether Dr. Dupre's care met the required standard, and this was an issue for the jury to determine. The jury heard all of the medical history of the case and all of the conflicting medical opinions as to Dr. Dupre's care. On appeal, we cannot reverse this factual finding by the jury in the absence of clear error. We find no such error in this record.
For the reasons assigned, we reinstate our original opinion as explained herein.
NOTES
[*] Judge William A. Culpepper, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] LSA-R.S. 9:2794 A(1) sets forth the proof required as to the standard of care to be exercised by general practicing physicians, as follows:

"The degree of knowledge or skill possessed or the degree ordinarily exercised by physicians, dentists, or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; ..."