564 So.2d 654 (1989)
Marion L. CANGELOSI, Sr., et ux.,
v.
OUR LADY OF THE LAKE REGIONAL MEDICAL CENTER, et al.
No. 89-C-1093.
Supreme Court of Louisiana.
October 23, 1989.
Dissenting Opinion November 20, 1989.
Rehearing Granted December 7, 1989.
Opinion on Rehearing April 20, 1990.
*656 Malcolm Dugas, Jr., George M. Papale, Stumpf, Dugas, LeBlanc, Papale & Ripp, Gretha, for plaintiffs-appellants.
Roger Fritchie, T. MacDougall Womack, Durrett, Hardin, Hunter, Dameron & Fritchie, Herbert J. Mang, Jr., Glen Scott Love, Mathews, Atkinson, Guglielmo, Marks & Day, F.W. Middleton, Jr., Vicki M. Crochet, Taylor, Porter, Brooks & Phillips, William N. Faller, Bell, Faller & West, Baton Rouge, Robert Kleinpeter, for defendants-appellees.
Dissenting Opinion of Justice Dennis November 20, 1989.
MARCUS, Justice.
Marion A. Cangelosi, Sr. and his wife brought this medical malpractice action to recover damages for injuries sustained by Mr. Cangelosi. Defendants were Our Lady of the Lake Hospital, Inc., Dr. Ronald A. Radzikowski, Dr. James S. Osterberger, Jr., Dr. William Booth, Dr. Donald Cowick, Dr. Marshall Sommers, Dr. Martin Peuler, Anesthesiology Group Associates, and Ms. A.L. Ashbaugh. Plaintiffs alleged that, at and/or between the intubation and extubation[1] accompanying gallbladder surgery, *657 negligence caused a fracture of two tracheal rings leading to a permanent tracheotomy and subsequent medical procedures.
A medical review panel ruled unanimously in favor of all defendants. Mr. and Mrs. Cangelosi then filed this suit. Plaintiffs voluntarily dismissed Drs. Cowick, Booth, and Sommers.[2] The remaining defendants moved for a directed verdict at the close of the plaintiffs' case. The trial judge took the motions under advisement. At the close of all the evidence, he granted directed verdicts in favor of Drs. Radzikowski and Osterberger, but denied the motions made by Our Lady of the Lake, Ms. Ashbaugh, Dr. Peuler, and Anesthesiology Group Associates. Next, finding that the doctrine of res ipsa loquitur did not apply to any of the defendants because no evidence showed that the injury would not have occurred in the absence of negligence, the trial judge refused to instruct the jury on the doctrine. The remaining defendants then made new motions for a directed verdict which the trial judge granted. Plaintiffs appealed. The court of appeal affirmed.[3] Upon plaintiffs' application to this court, we granted certiorari to determine the correctness of that decision.[4]
The issues presented are whether the trial judge was correct (1) in determining that the doctrine of res ipsa loquitur did not apply to this case and (2) in granting defendants' motions for a directed verdict at the close of all the evidence.

FACTS
Mr. Cangelosi entered Our Lady of the Lake Regional Medical Center in Baton Rouge on November 26, 1982 to undergo gallbladder surgery. He was 68 years old. Dr. Radzikowski, Mr. Cangelosi's treating physician, had recommended the gallbladder surgery. He testified to Mr. Cangelosi's history of health problems which included mild adult onset diabetes, a silent heart attack, pacemaker surgery, hiatal hernia, congestive heart failure, chronic pulmonary disease, and orthopnea, or breathlessness while lying flat. On admission, Mr. Cangelosi showed signs of congestive heart failure including breathlessness, swelling, and an irregular heart rhythm. As a result, the attending physicians postponed the surgery. By December 2, his condition was maximally compensated, meaning it was as good as it would be given his medical problems. Although he remained a high risk, surgery was performed on December 3. Ms. Ashbaugh, a certified registered nurse anesthetist employed by Anesthesiology Group Assoc., anesthetized and intubated Mr. Cangelosi. She testified that she did not use a stylet to intubate Mr. Cangelosi and that, in fact, she never uses a stylet. Dr. Peuler, an anesthesiologist and a co-worker, observed the intubation at Ms. Ashbaugh's request because of the high risk factor of Mr. Cangelosi's health. Several witnesses testified that Mr. Cangelosi's intubation and surgery were uneventful. He remained in intensive care until December 5. Testimony and the hospital records showed that, during this time, the cuff pressure was routinely checked and the endotracheal tube routinely suctioned. Dr. Osterberger, who practices with Dr. Radzikowski, testified that he removed the endotracheal tube without difficulty on December 5. He also explained the steps that he followed for proper extubation. Mr. Cangelosi had been intubated for a total of 53 hours.
On December 7, Dr. Radzikowski examined Mr. Cangelosi and noted labored breathing and congestion. His condition worsened and he was moved back to intensive care. Dr. Charles Mitchell, an ear-nose-throat *658 (ENT) physician, diagnosed laryngeal swelling secondary to the intubation. He prescribed medication, and the symptoms disappeared two days later. Dr. Mitchell released Mr. Cangelosi from his care, and he was transferred out of intensive care. On December 14, he was discharged from the hospital.
On December 29, Mr. Cangelosi saw Dr. Radzikowski for a post-operative visit. The doctor testified that he had not observed any breathing difficulties at that time. However, on January 4, Mr. Cangelosi saw Dr. Osterberger with complaints of hoarseness and shortness of breath. Dr. Osterberger testified that it sounded as though he was breathing through a straw. He made an appointment for Mr. Cangelosi with Dr. Mitchell who, after examination, admitted him to Our Lady of the Lake. The next day, Mr. Cangelosi was transferred to New Orleans to be examined by Dr. Daniel Mouney, an ENT specialist. The transfer summary indicated tracheal stenosis (narrowing of the trachea due to swelling or scar tissue) and stridor (a sound on respiration caused by constriction of the airway). Dr. Mouney performed a tracheotomy, which is an opening into the trachea through the neck, to maintain an airway for Mr. Cangelosi and to do a direct laryngoscopy. On direct observation, he saw scar tissue which had reduced the interior diameter of the trachea. In his opinion, the scar tissue covered collapsed and apparently fractured tracheal cartilaginous rings. Subsequently, Mr. Cangelosi underwent sixteen surgical procedures to reduce the continual growth of tissue and to maintain the airway. No procedures were performed after July 1986 because of his deteriorated general health. At the time of trial, Mr. Cangelosi resided in a nursing home following an unrelated stroke.
Dr. Mouney, testifying for the plaintiffs, said that his first impression was that Mr. Cangelosi had suffered an injury of the trachea. In his opinion, the event causing the damage to the trachea occurred sometime during the 53 hours of intubation. However, Dr. Mouney also testified that tracheal stenosis is seen in the absence of substandard care. He further stated that perichondritis,[5] the condition asserted by defendants as the cause of Mr. Cangelosi's tracheal stenosis, was a credible explanation and that an aging patient with heart and pulmonary disease is at a higher risk for developing tracheal stenosis. Moreover, he testified that a skilled and experienced person doing the intubation would know that the rings had fractured because of the force a fracture would require. Finally, if a fracture had occurred, blood would be seen on suctioning which is routinely done immediately after intubation.
Plaintiffs called Dr. Joseph Stirt, an anesthesiologist, as an expert witness. Dr. Stirt testified that, based on his review of the medical records, Mr. Cangelosi's injury would not have occurred in the absence of substandard care by some health care provider. He opined that some external force on the trachea caused the injury rather than an internal inflammation or infection. However, Dr. Stirt could not say with any certainty which event or defendant(s) might have caused the injury. Further, he testified that perichondritis is not within his area of expertise, and he deferred to Dr. Mouney's opinion whether it was a possible cause of Mr. Cangelosi's injury. Dr. Stirt also testified that he found no cases in the medical literature of fractured tracheal rings from intubation when a stylet was not used. Moreover, he estimated that his program does 10,000 to 15,000 intubations annually. He never saw or heard of a patient with a tracheal fracture caused by intubation during his four years with that institution.
*659 Additionally, the defense presented Drs. Mouney and Stirt with the following hypothet. An experienced and capable anesthesist intubated Mr. Cangelosi without using a stylet. The intubation was not difficult and the tracheal rings were not manipulated externally. No tracheal bleeding occurred, and an experienced anesthesiologist observed the intubation and felt that it was a-traumatic. Assuming these facts, both doctors conceded the unlikelihood that the intubation process caused Mr. Cangelosi's injury.[6] Defendants established by direct testimony all the factors in the hypothet.
Dr. Booth, testifying for the defendants, stated that a fracture of two tracheal rings on intubation was almost "inconceivable." He testified that an air leak would have occurred immediately with accompanying swelling. This condition is known as subcutaneous emphysema and is part of the diagnosis of a fractured trachea. Its appearance is dramatic and is also heard and felt. In addition, free air from an air leak is detected on x-rays. Mr. Cangelosi's x-ray reports did not indicate the presence of free air. Also, Dr. Cowick testified that the effect of fractured tracheal rings is immediately visible and palpable. Based on his review of the surgical records, he felt that fractured tracheal rings absolutely did not occur during intubation.
Similarly, Dr. Osterberger testified that the signs of a tracheal fracture are dramatic and immediate. Based on his opinion and a review of the medical records, the process of perichondritis leading to collapse of the tracheal rings was exactly what happened in this case. Dr. Radzikowski testified that, in his opinion, no fracture occurred at or during intubation or extubation. He stated that perichondritis was the cause of the injury, particularly given the length of time that intubation was required[7] and Mr. Cangelosi's overall physical condition. Further, he noted that Mr. Cangelosi's complaints of hoarseness and breathing difficulty on December 7 abated with the prescribed medications. If the rings had been fractured, the problems would not have cleared with these medications.
Dr. James LaNasa, an ENT physician, testified for the defendants that, with most patients, some abnormality of the tracheal lining occurs within two hours of being intubated. This is a normal event without any negligence on the part of any health care provider. In fact, he would have been surprised if no swelling or inflammation had occurred here. In his opinion, the cause of Mr. Cangelosi's injury was perichondritis aggravated by the patient's general health. Further, he testified that the endotracheal tube itself is too soft to exert sufficient force to break cartilaginous rings, particularly rings that have partially ossified due to aging as was the case with Mr. Cangelosi.
Ms. Ashbaugh stated that she has been practicing as an anesthetist since 1951. She estimated that she has done 40,000 to 50,000 intubations in her career. She testified that she remembered Mr. Cangelosi because of his high risk status and that the intubation was uneventful. Again, Ms. Ashbaugh testified that she did not use a stylet to intubate Mr. Cangelosi and that she never uses a stylet. She also described, as had Dr. Stirt, the procedure to follow if resistance is encountered during the first intubation attempt. Dr. Peuler stated that he has known Ms. Ashbaugh professionally for seven years and that, in his opinion, she was as fine an anesthetist as he had ever seen. He testified that he observed the intubation and saw nothing abnormal. Dr. Peuler estimated that, in his former career as an instructor, he supervised 7,000 to 10,000 intubations done by inexperienced personnel using stylets. He never saw a fracture on intubation. In his opinion, the fracture of two tracheal rings is physically impossible to do without the use of a stylet.

*660 RES IPSA LOQUITUR
This court recently addressed the doctrine of res ipsa loquitur:
The principle of res ipsa loquitur is a rule of circumstantial evidence that infers negligence on the part of defendants because the facts of the case indicate that the negligence of the defendant is the probable cause of the accident, in the absence of other equally probable explanations offered by credible witnesses. The doctrine allows an inference of negligence to arise from the common experience of the factfinder that such accidents normally do not occur in the absence of negligence.
Additionally, the doctrine does not dispense with the rule that negligence must be proved. It simply gives the plaintiff the right to place on the scales, "along with proof of the accident and enough of the attending circumstances to invoke the rule, an inference of negligence" sufficient to shift the burden of proof.
The doctrine applies only when the facts of the controversy "suggest negligence of the defendant, rather than some other factor, as the most plausible explanation of the accident. Application of the principle is defeated if an inference that the accident was due to a cause other than defendant's negligence could be drawn as reasonably as one that it was due to his negligence." The doctrine does not apply if direct evidence sufficiently explains the injury.
Montgomery v. Opelousas Gen. Hosp., 540 So.2d 312 (La.1989) (citations omitted).
As provided by La.R.S. 9:2794(C),[8] the court determines the applicability of res ipsa loquitur in medical malpractice actions. See Green v. Dupre, 520 So.2d 761 (La. App. 3d Cir.1987), cert. denied, 522 So.2d 568 (La.1988); Oswald v. Rapides Iberia Management Enter., 452 So.2d 1258 (La. App. 2d Cir.), cert. denied, 457 So.2d 14 (La.1984); Rogers v. Brown, 416 So.2d 624 (La.App. 2d Cir.), cert. denied, 422 So.2d 153 (La.1982).
Defendants argued that perichondritis caused Mr. Cangelosi's tracheal stenosis. All the physicians who testified addressed the issue of perichondritis. Drs. Booth, Cowick, Osterberger, Radzikowski, and LaNasa stated that, in their opinions, perichondritis was the only possible explanation. Even the plaintiffs' witness, Dr. Mouney, testified that perichondritis was a credible explanation. While Dr. Stirt testified that, in his opinion, the stenosis would not have resulted without the negligence of a health care provider, he deferred to Dr. Mouney's opinion on perichondritis. Additionally, he stated that the medical literature was devoid of examples of tracheal ring fracture on intubation when a stylet was not used. Further, Drs. Stirt and Peuler never saw a tracheal puncture caused by intubation during their extensive experience as anesthesiologists. Ms. Ashbaugh, an experienced anesthetist, testified that she did not use a stylet to intubate Mr. Cangelosi, no resistance was encountered, and the entire procedure was very uneventful. Moreover, Drs. Mouney and Stirt, testifying for the plaintiffs, admitted that a tracheal ring fracture during intubation was highly unlikely based on the given facts of Mr. Cangelosi's intubation. Hence, perichondritis is a reasonable explanation for Mr. Cangelosi's tracheal stenosis. The facts of the case do not suggest negligence by any of the defendants as the most plausible explanation. To the contrary, the facts of the case indicate that perichondritis is the most probable cause of the tracheal stenosis. Therefore, the trial judge was correct in finding that res ipsa loquitur did not apply.

DIRECTED VERDICT
Because res ipsa loquitor does not apply to this case, the plaintiffs have the *661 burden of proving defendants' negligence by a preponderance of the evidence as provided in La. R.S. 9:2794(C). In a medical malpractice action against a physician, the plaintiff must establish the doctor's deviation from the standard of care exercised by others in the same field. The plaintiff must also show a causal relationship between the doctor's alleged negligence and the resulting injury. La.R.S. 9:2794(A); Smith v. State, 523 So.2d 815 (La.1988). Nurses who perform medical services are subject to the same standards of care and liability as are physicians. Belmon v. St. Frances Cabrini Hosp., 427 So.2d 541 (La. App. 3d Cir.1983); Butler v. Louisiana State Bd. of Educ., 331 So.2d 192 (La.App. 3d Cir.), cert. denied, 334 So.2d 230 (La. 1976). Likewise, in a medical malpractice action against a hospital, the plaintiff must prove that a hospital caused the injury when it breached its duty. A hospital must exercise that amount of care required by a particular patient, and must protect that patient from external circumstances peculiarly within the hospital's control. Hunt v. Bogalusa Community Medical Center, 303 So.2d 745 (La.1974).
This court set forth the standard for granting a motion for a directed verdict in Hastings v. Baton Rouge Gen. Hosp., 498 So.2d 713 (La.1986):
A directed verdict should only be granted when the facts and inferences point so strongly in favor of one party that the court believes reasonable people could not reach a contrary verdict. It is appropriate, not when there is a preponderance of evidence, but only when the evidence overwhelmingly points to one conclusion.
The testimony and medical records support an uneventful intubation. Ms. Ashbaugh testified that she encountered no resistance during the intubation, and Dr. Peuler stated that the intubation was a-traumatic. Also, no air leak and accompanying swelling occurred. The surgeons testified that the dramatic signs of an air leak would have been seen immediately as well as heard and felt. Testimony showed that suctioning of the tube and checks of the cuff pressure were routinely documented in the medical records between the time of intubation and extubation with normal results. Dr. Stirt could not point to any specific act by any defendant which was substandard. Moreover, plaintiffs' witnesses testified that no injury occurred during extubation. Plaintiffs offered no evidence to refute the testimony which supports a normal intubation and extubation procedure. None of the evidence demonstrates a deviation from the standards of care required of physicians, nurses, and hospitals. The facts and inferences point so strongly in favor of defendants that reasonable minds could not reach a contrary verdict. Thus, the trial judge was correct in granting the directed verdicts.

DECREE
For the reasons assigned, judgment of the court of appeal is affirmed.
CALOGERO, J., concurs and assigns reasons.
DIXON, C.J., and DENNIS, J., dissent with reasons.
LEMMON, J., dissents and will assign reasons.
CALOGERO, Justice, concurring.
The inference from the majority's opinion, especially since it cites three court of appeal opinions [Green v. Dupre, 520 So.2d 761 (La.App. 3d Cir.1987), cert. denied, 522 So.2d 568 (La.1988); Oswald v. Rapides Iberia Management Enter., 452 So.2d 1258 (La.App. 2d Cir.), cert. denied, 457 So.2d 14 (La.1984); Rogers v. Brown, 416 So.2d 624 (La.App. 2d Cir.), cert. denied, 422 So.2d 153 (La.1982) ], is that the trial judge determines by a preponderance of the evidence that the qualifying conditions for res ipsa loquitur exist before he makes the determination to instruct the jury on the doctrine.
I am not at all sure this is the case. In my view, the language of La.R.S. 9:2794(C) providing that "(t)he provisions of this Section shall not apply ... where ... found by the court to be applicable" applies to the trier of fact, and not to the trial judge. (Emphasis added.)
*662 The reason I concur rather than dissent in this case is that the qualifying requirements of res ipsa, on the plaintiffs' best case scenario, fall short of establishing that the accident was the kind that occurs in the absence of negligence. Although plaintiffs' expert witness, Dr. Stirt, testified on direct examination that in his opinion, Mr. Cangelosi's injury would not have occurred without the negligence of some health care provider, he undermined that view when he deferred to Dr. Mouney's opinion on perichondritis, a condition that, according to Dr. Mouney and the defense expert witnesses, could be the cause of the injury and that can occur in the absence of negligence.
For these reasons, it was proper for the trial judge to refuse to give the res ipsa charge, for the plaintiffs' case, even standing alone, did not make the requisite prima facie showing.
DIXON, Chief Justice (dissenting).
I respectfully dissent.
The trial judge should not have taken the case from the jury, and should have given an appropriate instruction that placed the burden on defendants to show that the injury did not occur in intensive care.
DENNIS, Justice, dissenting.
I respectfully dissent.
The majority has misinterpreted La.R.S. 9:2794 in my opinion. My brethren do not read the statute as confirming the trial judge's traditional role of deciding whether it is permissible for the jury to infer negligence by the defendant under the doctrine of res ipsa loquitur. Instead, they say that the statute mandates a judicial usurpation of the jury's traditional function of determining whether, in light of the judge's res ipsa instruction, the circumstantial evidence suggests negligence of the defendant, rather than some other factor, as the most plausible explanation of the accident. A reading of the statute as a whole, giving to its words their generally prevailing meaning, and attending to their general and popular use, however, demonstrates the majority's error. La.Civil Code art. 11; See also La.Civil Code art. 14 (1870).
When properly construed, La.R.S. 9:2794 merely provides in essence that the jury shall be instructed that the plaintiff has the burden of proving the defendant's negligence, that the injury alone does not raise a presumption of negligence, but that these provisions shall not apply when res ipsa is applicable. Evidently, the legislature thought it necessary or desirable to expressly provide for an exception to the general burden of proof rules when res ipsa applies because the standard res ipsa jury instruction provides that the effect of invoking the rule is "an inference of negligence sufficient to shift the burden of proof." See Montgomery v. Opelousas General Hosp., 540 So.2d 312, 319 (La. 1989). Consequently, the statute in recognition of the judge's duty to instruct the jurors "on the law applicable to the cause", La.C.C.P. art. 1792, provides that the normal burden of proof instruction may be modified or amended when res ipsa "is found by the court to be applicable". La. R.S. 9:2794.
On the other hand, if the legislature had intended, for some peculiar reason, to drastically modify the traditional allocation of trial functions between judge and jury, with respect to one particular kind of factual inference, surely it would have said so in no uncertain terms, rather than leaving it to a court to impute esoteric meaning to words which on their face seem to continue the inherited pattern of an ordinary jury trial. Indeed, in other instances in which the legislature has placed a limitation upon the right to have all issues of a civil case tried by a jury it has done so expressly, clearly and unmistakably. See La.C.C.P. arts. 1731-1732, 1735-1736.
As a result of the erroneous action by the trial judge, which was aggravated further by the majority's misinterpretation of La.R.S. 9:2794, the jury's role in this civil trial was severely curtailed if not removed in toto. Additionally, if the statute had been properly interpreted and applied, it would have been permissible for the jury to infer negligence of some defendant as the most plausible explanation of plaintiff's injuries. Therefore, the litigation was ended *663 prematurely by the improper granting of the directed verdict by the trial judge. Consequently, I must dissent respectfully from what I believe to be an incorrect interpretation of La.R.S. 9:2794, and the miscarriage of justice resulting therefrom.

ON REHEARING

LEMMON[*], Justice.
We granted rehearing to reconsider the interpretation of La.Rev.Stat.Ann. 9:2794 C in particular and the doctrine of res ispa loquitur in medical malpractice cases in general.

Facts and Procedural History
This case arose when plaintiff sustained a fracture of two cartilage rings in his trachea during or after gallbladder surgery at Our Lady of the Lake Regional Medical Center (the Hospital) on December 3, 1982. Because plaintiff's age and physical ailments made him a high risk surgical candidate, both Nurse Ann Ashbaugh, a certified registered anesthetist, and Dr. Martin Peuler, an anesthesiologist from the Anesthesiology Group Associates (the Group) which also employed Nurse Ashbaugh, were present while plaintiff was intubated and anesthetized.[1]
For the intubation the anesthetist inserted the endotracheal tube into plaintiff's mouth, through the larynx, and into the trachea. The nurse then inflated a cuff at the end of the tube to seal the trachea. The tube remained in place during the surgery and the following recuperative period for fifty-three hours, during which time the tube provided a conduit initially for anesthesia gases and later for mechanical respiration. According to the medical personnel both the intubation and the extubation (on December 5 by an internist) were uneventful.
The day after extubation the attending internist noted plaintiff's labored breathing and congestion. Dr. Charles Mitchell, an otolaryngologist, diagnosed laryngeal edema secondary to endotracheal intubation and prescribed medication. The condition had apparently improved when plaintiff was discharged from the hospital on December 14.
On January 4, 1983, plaintiff went to the hospital emergency room where Dr. Mitchell diagnosed tracheal stenosis (a narrowing of the interior diameter of the trachea). Because of plaintiff's persistent stridor and because the equipment necessary to perform further diagnostic procedures was not available to Dr. Mitchell, he referred plaintiff to Dr. Daniel Mouney, also an otolaryngologist.[2]
The next day Dr. Mouney performed a tracheostomy for airway control. A direct laryngoscopy revealed that scar tissue had reduced the interior diameter of the trachea. Dr. Mouney opined that the scar tissue covered two of the cartilage rings in plaintiff's trachea which had separated and fractured. Sixteen surgical procedures were thereafter necessary to reduce the continual growth of the scar tissue and to maintain an adequate airway. Plaintiff has a permanent tracheostomy as a result of the tracheal condition.
At the trial of the malpractice action plaintiff presented the testimony of Dr. Mouney and Dr. Joseph Stirt, an anesthesiologist, to establish that a traumatic injury occurred during the insertion of the tube or the fifty-three hours of intubation and that substandard medical care was more probably than not the cause of the injury. On the other hand, the defendants presented evidence to establish that tracheal stenosis may occur in the absence of substandard care and that perichondritis, an inflammation which slowly develops and dissolves *664 the cartilage in the tracheal rings, was an equally plausible non-negligent explanation for the tracheal stenosis.[3]
At the close of the evidence the trial judge denied defense motions for a directed verdict, noting that reasonable minds could differ on the issue of negligent versus non-negligent causation. The judge then considered whether to charge the jury on the doctrine of res ipsa loquitur under La.Rev. Stat.Ann. 9:2794 C.[4] Interpreting the statute as requiring him to weigh the evidence to find a preponderance in favor of plaintiff in order for plaintiff to be entitled to a jury instruction on res ipsa loquitur, the judge concluded that plaintiff had not met this burden of proof. Accordingly, the judge announced that the doctrine was inapplicable under the evidence in this case and declined to instruct the jury on the doctrine.
This ruling prompted another motion for a directed verdict by defendants. The trial judge, noting that plaintiff had relied solely on res ipsa loquitur and had presented no direct evidence of substandard care, granted the motion and dismissed the case.
The court of appeal affirmed, agreeing with the trial court's interpretation of Section 2794 C and with the granting of the motion for directed verdict. 542 So.2d 90. Alternatively, the intermediate court, based on its review of the complete record, independently concluded that the defendant's evidence effectively rebutted any inference of negligent causation of the injury.
We granted certiorari and on original hearing affirmed the judgments of the lower courts, but have now granted this rehearing on plaintiff's application.

Res Ipsa Loquitur
In an action to recover damages for injuries allegedly caused by another's negligence, the plaintiff has the burden of proving negligence on the part of the defendant by a preponderance of the evidence. Jordan v. Travelers Insurance Co., 257 La. 995, 245 So.2d 151 (1971). Proof is sufficient to constitute a preponderance when the entirety of the evidence, both direct and circumstantial, shows that the fact or causation sought to be proved is more probable than not. Boudreaux v. American Insurance Co., 262 La. 721, 264 So.2d 621 (1972). Thus, the plaintiff in this type of action must produce evidence from which the factfinder can reasonably conclude that his injuries, more probably than not, were caused by the negligence of the particular defendant. The plaintiff, however, does not have to conclusively exclude all other possible explanations for his injuries, because the standard is not proof beyond a reasonable doubt. Restatement (Second) of Torts § 328D (1965); W. Prosser & W. Keeton, The Law of Torts § 39, at 248 (5th ed. 1984); Naquin v. Marquette Casualty Co., 244 La. 569, 153 So.2d 395 (1963); Boudreaux v. American Insurance Co., supra. Placing the burden of proof on the plaintiff requires him ultimately to persuade the factfinder concerning the defendant's negligence, and if the factfinder is undecided after all the evidence has been presented, the plaintiff loses because of the failure of his evidence. Malone, Res Ipsa Loquitur and Proof By Inference, 4 La.L.Rev. 70, 88 (1941).
As previously noted, the proof may be by direct or circumstantial evidence. See Jordan v. Travelers Insurance Co., supra. A fact established by direct evidence is one which has been testified to by witnesses as having come under the cognizance of their senses. J. Wigmore, Evidence § 25, at 954 (1983). Circumstantial *665 evidence, on the other hand, is "evidence of one fact, or of a set of facts, from which the existence of the fact to be determined may reasonably be inferred".[5] W. Prosser & W. Keeton, supra, § 39, at 242.
Use of circumstantial evidence and the deductions and inferences arising therefrom is a common process for establishing liability in negligence cases. Malone, supra, at 71. However, the inferences drawn from the circumstantial evidence must cover all the necessary elements of negligence, and the plaintiff must still sustain the burden of proving that his injuries were more likely than not the result of the defendant's negligence. W. Prosser & W. Keeton, supra, § 39, at 243.
Negligence on the part of the defendant may be proved by circumstantial evidence alone when that evidence establishes, more probably than not, that the injury was of a kind which ordinarily does not occur in the absence of negligence, that the conduct of the plaintiff or of a third person was sufficiently eliminated by the evidence as a more probable cause of the injury, and that the indicated negligence was within the scope of the defendant's duty to the plaintiff. Restatement, supra, § 328D. Although the fact that an accident has occurred does not alone raise a presumption of the defendant's negligence, the doctrine of res ipsa loquitur (the thing speaks for itself) permits the inference of negligence on the part of the defendant from the circumstances surrounding the injury.[6] S. Speiser, Res Ipsa Loquitur § 1:1 (1972). The doctrine of res ipsa loquitur involves the simple matter of a plaintiff's using circumstantial evidence to meet the burden of proof by a preponderance of the evidence.[7] McCormick on Evidence § 342, at 966-67 (E. Cleary 3d ed. 1984). The doctrine merely assists the plaintiff in presenting a prima facie case of negligence when direct evidence is not available. J. Lee & B. Lindahl, supra, § 1522 n. 4. The doctrine permits, but does not require, the trier of fact to infer negligence from the circumstances of the event.[8] McCormick on Evidence, supra, § 342, at 967; Boudreaux v. American Insurance Co., supra; Larkin v. State Farm Mutual Automobile Insurance Co., supra.57126391
In order to utilize the doctrine of res ipsa loquitur the plaintiff must establish *666 a foundation of facts on which the doctrine may be applied. S. Speiser, supra, § 2:1, at 30. The injury must be of the type which does not ordinarily occur in the absence of negligence. Restatement, supra, § 328D(1)(a). In other words, "the event must be such that in light of ordinary experience it gives rise to an inference that someone must have been negligent". W. Prosser & W. Keeton, supra, § 39, at 244. The basis on which this conclusion is drawn is usually knowledge common to the community as a whole, although in cases such as medical malpractice expert testimony may be used to establish this principle. Id. at 247; Restatement, supra, § 328D, comment d. The plaintiff does not have to eliminate all other possible causes or inferences, but must present evidence which indicates at least a probability that the injury would not have occurred without negligence. W. Prosser & W. Keeton, supra, § 39, at 248; S. Speiser, supra, § 2:4.
The facts established by plaintiff must also reasonably permit the jury to discount other possible causes and to conclude it was more likely than not that the defendant's negligence caused the injury. Restatement, supra, § 328D(1)(b); S. Speiser, supra, § 2:5. Again, the plaintiff does not have to eliminate completely all other possible causes, but should sufficiently exclude the inference of his own responsibility or the responsibility of others besides the defendant in causing the accident.[9] The inference of negligence points to the defendant when the conduct of others is eliminated as a more probable cause. Restatement, supra, § 328D, comment i; W. Prosser & W. Keeton, supra, § 39, at 254. The plaintiff must show not only that an accident occurred or that the accident was caused by the negligence of someone, but also that the circumstances warrant an inference of defendant's negligence.
The plaintiff must also establish that the defendant's negligence indicated by the evidence falls within the scope of his duty to the plaintiff. Restatement, supra, § 328D(1)(c). This is often, but not necessarily, proved by a showing that the defendant was in exclusive control of the injury-causing instrumentality.
Use of the doctrine of res ipsa loquitur in a negligence case, as in any case involving circumstantial evidence, does not relieve the plaintiff of the ultimate burden of proving by a preponderance of the evidence all of the elements necessary for recovery. J. Wigmore, supra, § 2509. When all the evidence is in, the question for the jury is whether the preponderance of the evidence is with the plaintiff. Larkin v. State Farm Mutual Automobile Insurance Co., supra; Sweeney v. Erving, 228 U.S. 233, 33 S.Ct. 416, 57 L.Ed. 815 (1913).
The doctrine of res ipsa loquitur is applied after all of the evidence has been presented. King v. King, 253 La. 270, 217 So.2d 395 (1968). The trial judge initially determines whether the jury could reasonably infer from the circumstances that the plaintiff's injury was caused by the negligence of the defendant. If the judge determines that reasonable minds could reach different conclusions, it is the function of the judge to instruct the jury on the doctrine, and it is the function of the jury to decide whether to draw the inferences or not.[10] Restatement, supra, § 328D(2), comment 1; W. Prosser & W. Keeton, supra, § 39, at 243.
Thus, the standard to be applied by the trial judge in deciding whether to instruct *667 the jury on res ipsa loquitur is the same standard used in deciding whether to grant a directed verdict, namely, whether the facts and inferences point so strongly and overwhelmingly in favor of one party that reasonable men could not arrive at a contrary verdict. Breithaupt v. Sellers, 390 So.2d 870 (La.1980); 9 C. Wright & A. Miller, Federal Practice and Procedure, § 2524, at 545 (1971). If reasonable minds could reach different conclusions on whether the defendant's negligence caused the plaintiff's injury, then the judge must present the issue to the jury and instruct the jury on the doctrine of res ipsa loquitur.

Interpretation of La.Rev.Stat.Ann. 9:2794 C
We initially granted certiorari and have now granted a rehearing to determine whether La.Rev.Stat.Ann. 9:2794 C requires a different allocation of trial functions between judge and jury in medical malpractice cases than in other negligence cases.[11]
This statute, which was enacted contemporaneously with the Medical Malpractice Act, was designed to benefit health care providers in regard to jury instructions. The principal thrust of the statute is to require the trial judge to instruct the jurors that they are prohibited from presuming that the health care provider was negligent merely because an injury occurred. However, the statute also recognizes an exception to the required giving of this prohibitory instruction. When there is proof of an injury under circumstances from which a rational juror could reasonably infer that the health care provider was negligent, the trial judge does not instruct the jurors that they are prohibited from presuming negligence from those circumstances.
Section 2794 C contemplates that the trial judge shall determine the applicability of res ipsa loquitur in medical malpractice cases. However, the lower courts interpreted Section 2794 C to require that the plaintiff prove his case by a preponderance of the evidence to the judge in order to be entitled to a jury instruction on res ipsa loquitur. Under this interpretation a defendant can persuade either the judge or the jury in order to win the case, while the plaintiff must persuade both in order to prevail. If the Legislature had intended to place this extreme burden on the plaintiff and to alter drastically the traditional allocation of trial functions between judge and jury, it would have done so in express terms.
A more reasonable interpretation, and one which is consistent with the general application of res ipsa loquitur, is that the trial judge must determine whether the evidence reasonably permits the jury to infer negligence by the defendant under the doctrine. If the judge concludes that an instruction on res ipsa loquitur is not appropriate under the evidence in the case, then the doctrine is not applicable, and Section 2794 C requires the judge to instruct the jury that injury alone does not raise a presumption of negligence by the health care provider. On the other hand, if the judge concludes that an instruction on res ipsa loquitur is appropriate under the evidence, then the doctrine is applicable, and the instruction otherwise required by Section 2794 C need not be given.[12]
*668 In the present case the trial judge determined that reasonable minds could differ on the conclusion to be drawn from the evidence regarding negligent or non-negligent causation of plaintiff's injury. Therefore, the judge should have instructed the jury on the doctrine of res ipsa loquitur and allowed the jury to decide whether an inference of negligence was to be drawn from the evidence in this case.[13]

Disposition of Present Case
Because the lower courts erred in interpreting La.Rev.Stat.Ann. 9:2794 C so as to take the negligence issue from the jury even though the trial judge concluded the evidence reasonably permitted an inference of negligence, the directed verdict must be set aside. Plaintiff therefore argues that the deprivation of his right to have the jury decide the negligence question should entitle him to a new jury trial.
In Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975), this court held that when an appellate court has a complete record in a case in which an erroneous ruling on evidence or an erroneous jury instruction requires the appellate court to set aside the judgment of the trial court, it is not necessary to remand the case for a new trial. Under its constitutional authority to review facts in civil cases an appellate court can render a judgment on the basis of an independent review of the record, without according any weight whatsoever to the judgment or jury verdict.[14]McLean v. Hunter, 495 So.2d 1298 (La.1986).
When the court of appeal in Gonzales decided the case on remand by reviewing the complete record without any deference to the verdict of the jury (which had decided in favor of the defendant), the plaintiff in that case was deprived of the right to a new jury trial. An appellate court's deciding the case on the record in this case is no more unfair than the same procedure in the Gonzales case.[15]
The court of appeal in the present case performed an independent review of the record and concluded, without allowing any deference to the trial court's decision, that the defendants' evidence rebutted any inference that plaintiff's injury was caused by the negligence of any defendant. Our review of the record produces the same conclusion.[16]
Plaintiff's case consisted primarily of the opinions of Dr. Mouney and Dr. Stirt, who suspected substandard care during the insertion of the tube or the period of intubation because of the presence of stridor, the location of the fracture, the development of scar tissue after the fracture, and the lack of fever or other signs of infection. However, as noted on original hearing, Dr. Mouney conceded that tracheal stenosis may occur in the absence of substandard medical care, that perichondritis is a credible *669 explanation of plaintiff's tracheal stenosis, and that an elderly patient with heart and pulmonary disease (such as plaintiff had) is at a higher risk of developing tracheal stenosis. He also testified that considerable force is required to fracture tracheal rings on intubation and that blood would have been seen on routine suctioning after intubation if a fracture had occurred.
Dr. Stirt testified that he knew of no cases in medical history or literature of a fractured tracheal ring from an intubation when a stylet was not used.[17] He also stated that perichondritis was not within his area of expertise and deferred to Dr. Mouney's opinion whether perichondritis was a possible cause of plaintiff's injury.
The medical experts presented by defendants testified that plaintiff's post-surgery complaints would not have improved with medication if the tracheal rings had been fractured during the intubation, that plaintiff had no stridor and no difficulty breathing on two visits between his hospital discharge and his emergency room appearance, that a diagnosis of perichondritis was consistent with the length of time of intubation and the patient's overall physical condition, and that the fracture of two tracheal rings is an injury which almost never occurs in intubations done without a stylet.[18]
On the basis of our review of the complete record in this case we conclude that the evidence indicating that the injury was caused other than by the defendants' negligence is at least as equally plausible as the evidence that it was caused by the defendants' negligence. See Pilie v. National Food Store, 245 La. 276, 158 So.2d 162 (1973). Plaintiff has therefore failed to prove that, more probably than not, his injury was caused by the negligence of any defendant in this case. Boudreaux v. American Insurance Co., supra.

Decree
For the reasons assigned, the judgment of the court of appeal is affirmed.
MARCUS, J., concurs and assigns reasons.
WATSON, J., concurs and will assign reasons.
COLE, J., concurs in the result.
MARCUS, Justice (concurring).
I concur with the result only. La.R.S. 9:2794(C) provides that the jury shall be instructed that injury alone does not raise a presumption of the physician's negligence unless the court finds that res ipsa loquitur applies. The high standard imposed on the judge by the majority negates this provision and will make the exception the rule. Clearly, the facts of this case do not suggest that the defendants' negligence was the probable cause of the injury. To the contrary, the facts indicate that perichondritis was the most probable cause of the tracheal stenosis. Accordingly, the trial judge was correct in finding that res ipsa loquitor did not apply.
Further, the majority states that "the trial judge concluded the evidence reasonably permitted an inference of negligence." The majority also states that "the trial judge determined that reasonable minds could differ on the conclusion to be drawn from the evidence regarding negligent or non-negligent causation of plaintiff's injury." I disagree. The record reveals the following reasons stated by the trial judge prior to his finding that res ipsa loquitor did not apply:
Evaluating all of this testimony of the defense which indicates the most probable *670 cause of the injury is not negligence against one testimonyone expert's testimony that it is, and evaluating the plaintiff's own testimony of Dr. Mouney which falls on both sides, the [c]ourt must necessarily conclude that the evidence preponderates in favor of a finding that this injury does notdoes ordinarily occur and it does notand it fails the test that it does not ordinarily occur in the absence of negligence. The evidence preponderates in favor of a finding that the nonnegligent theory of perichondritis is the most probable one. Applying the test of Boudreaux and the test of Morgan, the [c]ourt must therefore conclude that the doctrine of res ipsa is not applicable to this case. Accordingly, I will not charge the jury on the doctrine of res ipsa.
I also disagree with the majority's conclusion that the trial judge erred in directing a verdict. As previously stated on original hearing:
The testimony and medical records support an uneventful intubation. Ms. Ashbaugh testified that she encountered no resistance during the intubation, and Dr. Peuler stated that the intubation was a-traumatic. Also, no air leak and accompanying swelling occurred. The surgeons testified that the dramatic signs of an air leak would have been seen immediately as well as heard and felt. Testimony showed that suctioning of the tube and checks of the cuff pressure were routinely documented in the medical records between the time of intubation and extubation with normal results. Dr. Stirt could not point to any specific act by any defendant which was substandard. Moreover, plaintiffs' witnesses testified that no injury occurred during extubation. Plaintiffs offered no evidence to refute the testimony which supports a normal intubation and extubation procedure. None of the evidence demonstrates a deviation from the standards of care required of physicians, nurses, and hospitals. The facts and inferences point so strongly in favor of defendants that reasonable minds could not reach a contrary verdict. Thus, the trial judge was correct in granting the directed verdicts.
However, I do agree with the majority that the record supports a finding that plaintiffs failed to prove that the injury was caused by the negligence of any defendant in this case.
Accordingly, I respectfully concur.
WATSON, Justice, concurring:
I agree with the result reached by the majority, which is the same as that of the original opinion. Also, I agree with most and perhaps all of the scholarly discussion on res ipsa loquitur.
However, I concur to note my disagreement with the unnecessary confection of a "directed verdict" standard to be used to determine whether the trial court should give a res ipsa loquitur instruction. LSA-R.S. 9:2794(C) uses the phrase "... where the doctrine of res ipsa loquitur is found by the court to be applicable." The requirement requires the judge to determine whether there is evidence justifying a charge on res ipsa loquitur. I agree with the statements in the opinion that:
A more reasonable interpretation and one which is consistent with the general application of res ipsa loquitur, is that the trial judge must determine whether it is permissible under the evidence for the jury to infer negligence by the defendant under the doctrine. If the judge by the usual standards concludes that an instruction on res ipsa loquitur is not appropriate under the evidence in the case, then the doctrine is not applicable, and Section 2794C requires the judge to instruct the jury that injury alone does not raise a presumption of negligence by the health care provider. On the other hand, if the judge concludes that an instruction on res ipsa loquitur is appropriate under the evidence, then the doctrine is applicable, and the instruction otherwise required by Section 2794C need not be given.
The process, it appears to me, is much like that of criminal procedure, where the judge gives the jury the charges appropriate *671 under the evidencenot like a directed verdict or a JNOV.
There is nothing in the statute about the court finding that reasonable minds could not differ. The legislature could have added such a stringent evidentiary standard, but they did not.
Therefore, I respectfully concur.
NOTES
[1] Intubation is the placement of a flexible, soft plastic endotracheal tube into the patient's mouth which is passed through the larynx, between the vocal cords, and into the trachea. The fundamental purpose of intubation is to maintain an open airway. Oxygen and anesthetic gases are administered through the tube. A cuff at the end of the tube is inflated to seal the trachea. The seal stops the backflow of aspiration into the lungs and prevents the escape of gases and oxygen thus providing control over the pressures within the lungs. The tube can be inserted with or without a stylet. A stylet is a flexible aluminum rod which is placed inside the tube to help shape it to the patient's anatomy. Extubation is the removal of the tube.
[2] Drs. Cowick and Booth performed the gallbladder surgery. Dr. Sommers, an anesthesiologist, was present in the recovery room.
[3] 542 So.2d 90 (La.App. 1st Cir.1989).
[4] 546 So.2d 1201 (La.1989).
[5] Several witnesses described perichondritis. The endotracheal tube is not immobile after insertion. It moves as the patient swallows, moves their head, etc. Thus the tube rubs on the mucousal lining, or perichondrium, of the trachea denuding and abrading the tissue. This can lead to perichondritis, or inflammation of the cartilage. The inflammation softens the cartilage. Scar tissue forms and contracts pulling the cartilage inward narrowing the trachea. Eventually, the cartilaginous ring fractures into two pieces. This condition is commonly aggravated when the tube and/or cuff presses against the lining of the trachea cutting off the blood supply to the tissue.
[6] Testimony during the plaintiffs' case-in-chief proved that no injury occurred during the removal of the tube.
[7] None of the testifying physicians felt that the length of time of intubation was excessive for this case.
[8] La.R.S. 9:2794(C) provides:

In medical malpractice actions the jury shall be instructed that the plaintiff has the burden of proving, by a preponderance of the evidence, the negligence of the physician, dentist or chiropractic physician. The jury shall be further instructed that injury alone does not raise a presumption of the physician's, dentist's or chiropractic physician's negligence. The provisions of this Section shall not apply to situations where the doctrine of res ipsa loquitur is found by the court to be applicable. [Emphasis added.]
[*] Retired Chief Justice John A. Dixon, Jr. participated in this case having been a member and Chief Justice of this Court when the case was orally argued and taken under advisement.
[1] Other health care providers were originally joined as defendants, but were dismissed voluntarily or by the court prior to the completion of the trial. The remaining defendants at the time of the ruling presently at issue were the Hospital, the Group, Dr. Peuler and Nurse Ashbaugh.
[2] At the time of plaintiff's discharge, according to the hospital records, stridor (a respiratory sound caused by constriction of the airway) was present, and family members continued to hear this sound thereafter.
[3] It is undisputed that the gallbladder surgery was necessary and that intubation was appropriate for this surgical procedure. It is also undisputed that perichondritis can occur following intubation even when the health care providers exercise the required degree of care.
[4] La.Rev.Stat.Ann. 9:2794 C provides:

In medical malpractice actions the jury shall be instructed that the plaintiff has the burden of proving, by a preponderance of the evidence, the negligence of the physician, dentist or chiropractic physician. The jury shall be further instructed that injury alone does not raise a presumption of the physician's, dentist's or chiropractic physician's negligence. The provisions of this Section shall not apply to situations where the doctrine of res ipsa loquitur is found by the court to be applicable.
[5] Circumstantial evidence was described in J. Lee & B. Lindahl, Modern Tort Law § 15.42, at 546 (rev. ed. 1989), as follows:

Circumstantial evidence allows the court or the jury to reason from circumstances known and proved to establish a disputed fact by inference. Circumstantial evidence does not directly prove the existence of a fact, but gives rise to a logical inference that such a fact does exist.
It has been observed that circumstantial evidence consists of a number of disconnected and independent facts from several witnesses and sources, which converge toward the fact in issue as a common center. Circumstantial evidence has substance because the factfinder, court or jury, may make reasonable inferences from certain proof. Circumstantial evidence is nothing more than one or more inferences, which may be said to reasonably arise from a series of proven facts. (footnotes omitted).
[6] The phrase res ipsa loquitur was first mentioned in the 1863 English case, Byrne v. Boadle, 2 H. & C. 722, 159 Eng.Rep. 299 (1863), where a barrel of flour rolled out of a warehouse window onto a pedestrian. There was no direct evidence that the barrel fell because of any negligence on the part of the warehouse owner. However, the phrase was presented to the jury to explain that, even without direct evidence, the conclusion could be drawn that the accident was the owner's fault. Restatement, supra, 328D, comment a; W. Prosser & W. Keeton, supra, § 39, at 243; J. Lee & B. Lindahl, supra, § 15:19.
[7] In a negligence case there is frequently no direct evidence available to the plaintiff as to the cause of the injury. This lack of direct evidence to prove the defendant's negligence "actually furnishes the occasion and necessity for invoking the rule in its strict and distinctive sense". Larkin v. State Farm Mutual Automobile Insurance Co., 233 La. 544, 97 So.2d 389 (1957). In such a case the plaintiff must present evidence of circumstances surrounding the incident which raises inferences from which the factfinder may reasonably conclude that the defendant caused the plaintiff's injuries.
[8] Application of the doctrine creates a permissive inference (which the jury may draw or refuse to draw) rather than a presumption (which requires a directed verdict for the plaintiff if the defendant offers no evidence to rebut it). Restatement, supra, § 328D, comment m.
[9] Of course, with the advent of comparative fault, the effect of any negligence on the plaintiff's part is simply to reduce recovery and not to relieve the defendant of liability.
[10] Restatement, supra, § 328D(3), states that "[i]t is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may reasonably be reached". Once the judge submits the case to the jury, that body determines whether the inference of negligence should be accepted or rejected. It is at this time that the plaintiff's burden of proof comes into play. Malone, supra, at 88. If the jury accepts the inferences arising from the circumstances surrounding the injury as making it more likely than not that the cause of the accident was the defendant's negligence, then the plaintiff has satisfied his burden of proof. If the inferences accepted by the jury do not support such a conclusion, or if the jury is undecided, the plaintiff loses.
[11] The doctrine of res ipsa loquitur applies in medical malpractice actions under the same conditions as in other negligence actions, with the same elements needed to establish the foundation facts for invoking the doctrine. J. Lee & B. Lindahl, supra, § 2564 n. 4. In medical malpractice actions based on res ipsa loquitur the plaintiff generally must use expert testimony to establish that the plaintiff's injury is a type which ordinarily would not occur in the absence of negligence. Lay jurors with common knowledge and ordinary experience cannot be expected to infer from the circumstances surrounding an injury incurred during medical procedures whether the health care provider failed to use reasonable care and whether this failure was a cause of the injury. Expert evidence may also be used by the defendant to show that he did use reasonable care and that the accident could have happened in spite of the use of reasonable care. S. Speiser, supra, § 2:8.
[12] The standard to be used by the trial judge in determining whether it is permissible for the jury to infer negligence by the defendant under the doctrine of res ipsa loquitur in medical malpractice cases (and thus whether to instruct the jury on the doctrine) is the same standard used in other negligence cases. The trial judge must instruct the jurors on the doctrine of res ipsa loquitur unless the overall evidence, both direct and circumstantial, point so overwhelmingly in favor of the health care provider that no rational juror could find in favor of the plaintiff. If reasonable minds could reach different conclusions on the evidence, then the trial judge must give the res ipsa loquitur instruction.
[13] Restatement, supra, § 328D, comment e, states:

It is enough that the facts proved reasonably permit the conclusion that negligence is the more probable explanation. This conclusion is not for the court to draw, or to refuse to draw, in any case where either conclusion is reasonable; and even though the court would not itself find negligence, it must still leave the question to the jury if reasonable men might do so.
[14] It has been suggested in dicta that an appellate court can decline to make factual findings on the basis of its review of the record when the nature of the evidence in the particular case dictates that the resolution of conflicting evidence should be made by an initial trier of fact at a new trial. Ragas v. Argonaut Southwest Insurance Co., 388 So.2d 707 (La.1980).
[15] The fact that this case came up on appeal from a directed verdict rather than from a jury verdict (as in Gonzales) is of no consequence. In both cases the plaintiff (who requested the jury) does not derive any benefit (or suffer any detriment) from the verdict by the earlier jury, and in both cases the plaintiff is denied any benefits of a trial before a new jury.
[16] We granted certiorari to review the lower courts' interpretation of La.Rev.Stat.Ann. 9:2794 C. Having corrected that error on certiorari, we now agree with the intermediate court's alternative holding.
[17] The anesthetist testified that she did not use a stylet in the present case and never uses stylets in performing intubations. Her testimony was corroborated by other surgical personnel.
[18] Defendants' experts testified that during intubation the tracheal membrane can be compressed between the inflated cuff of the endotracheal tube and the hard cartilaginous rings below the surface of the membrane, reducing blood supply to the membrane and depriving the cartilage of its blood supply. Perichondritis, which is an inflammation of the perichondrium (the tissues surrounding the cartilage), occurs more readily in patients with restricted blood supply because of factors such as advanced age, heart disease and diabetes (conditions which were applicable to plaintiff). Scar tissue may form at the weakened cartilage, and the trachea can lose its structural integrity.