## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 07-1097

**CLINT DESOTO, ET AL.**

**VERSUS**

**FORD MOTOR COMPANY, ET AL.**

************

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2005-8574
HONORABLE MARK A. JEANSONNE, DISTRICT JUDGE

************

## MICHAEL G. SULLIVAN
## JUDGE

************

Court composed of Oswald A. Decuir, Michael G. Sullivan, and James T. Genovese, Judges.

**REVERSED.**

Robert G. Nida
Gold, Weems, Bruser, Sues & Rundell
Post Office Box 6118
Alexandria, LA 71307-6118
(318) 445-6471
Counsel for Plaintiffs/Appellees:
      Clint Desoto
      Jayleen Desoto

Robert W. Maxwell
James C. Rather, Jr.
McCranie, Sistrunk, Anzelmo,
  Hardy, Maxwell & McDaniel
195 Greenbriar Blvd., Suite 200
Covington, Louisiana  70433
(504) 831-0946
Counsel for Defendants/Appellants:
      Ford Motor Company
      Hixson Autoplex of Alexandria, Inc.

**SULLIVAN, Judge.**

In this products liability case, the plaintiffs assert that their 2000 Ford F150 truck caught fire as the result of a manufacturing defect. The manufacturer and the seller appeal the trial court's judgment in plaintiffs' favor. For the following reasons, we reverse.

### *Facts*

On May 21, 2005, Clint and Jayleen Desoto's 2000 Ford F150 pickup truck caught on fire during the early morning hours while they were sleeping. The evening before the fire, Mrs. Desoto had parked the truck, which had a manual transmission, in gear near the front of their mobile home. The Desotos were awakened early the next morning when they heard a loud noise and felt their mobile home begin to shake. They ran outside and saw the truck against the mobile home.

Mr. Desoto testified that the truck was making a cranking noise and that the rear wheels were spinning. About the same time, he saw flames burst through the hood of the truck. The burning truck caught the mobile home on fire where it had contact with the mobile home. Mr. Desoto was able to extinguish the mobile home fire but was unable to extinguish the truck fire.

Mrs. Desoto called 911. The volunteer fire department arrived while the truck was burning; the firemen pulled it away from the trailer and extinguished the fire. The firemen were unable to determine the source of the fire.

The Desotos filed a claim with their insurance company and were paid approximately $5,000 for their loss. After paying the Desotos, the insurance company took possession of the truck then had it destroyed.

1

After the fire, the Desotos learned that Ford had issued a safety recall on certain vehicles, including their truck, because the speed control deactivation switch could melt, smolder, or catch on fire. Mr. Desoto initially believed that someone had been trying to steal the truck when the fire occurred. However, after learning of the recall, he thought otherwise, and he and Mrs. Desoto filed suit against Ford and the dealership from which they purchased the truck, claiming the fire was caused by a redhibitory defect. The truck had 45,000 miles on the odometer when purchased and 165,000 miles on the odometer when the fire occurred. Mr. Desoto testified that he performed routine maintenance on the truck but no major repairs. He had no knowledge of any repairs made by the previous owner(s).

The matter was tried on the merits. At trial, the Desotos presented their testimony, the testimony of a volunteer fireman, documentation concerning the recall by Ford, photographs of the truck and mobile home while the fire was burning and after the fire was extinguished, and correspondence from Ford in support of their claims. Ford presented the testimony of Larry Helton, an expert in fire and explosion investigation. At the conclusion of the trial, the trial court applied the evidentiary doctrine of *res ipsa loquitor* and awarded judgment in favor of the Desotos, finding the truck's speed control deactivation switch caused the fire. The trial court awarded the following damages:

| | |
|---|---:|
| Loss of Truck | $ 4,500 |
| Damage to Mobile Home | 1,800 |
| General Damages Jayleen Desoto | 500 |
| General Damages Clint Desoto | 250 |
| Attorney Fees | 3,000 |

Ford appealed, assigning error with the trial court's determination that the speed control deactivation switch caused the fire. The Desotos answered the appeal,

seeking increases in their general damage awards, general damages for the children who were present during the fire, and an increase in attorney fees for work performed on appeal.

### *Standard of Review*

Ford argues that the Desotos did not prove the existence of a defect which caused their truck to catch fire. Sufficiency of the evidence is a legal issue. *Darbonne v. Wal-Mart Stores, Inc.,* 00-551 (La.App. 3 Cir. 11/2/00), 774 So.2d 1022, (citing *Evans v. Lungrin*, 97-541 (La. 2/6/98), 708 So.2d 731). Under Louisiana jurisprudence, the manifest error standard of review is not applicable if a trial court commits legal error which interdicts the fact-finding process. *Id.* In such situations, the appellate court should make its own independent de novo review of the record and determine by a preponderance of the evidence if the record is complete. Insufficiency of the evidence arguments apply when, as here, the appellant argues that the party with the burden of proof lacks the necessary evidence to tip the scales over to the level of the applicable standard. In reviewing the trial court's judgment, we must still resolve any factual conflicts by application of the manifest error rule and cannot disturb express or implied factual findings of the trier of fact. *Id.*

### *Discussion*

The supreme court observed in *Lawson v. Mitsubishi Motor Sales of America, Inc.,* 05-257, pp. 7-8 (La. 9/6/06), 938 So.2d 35, 40, that "[a] products liability claim is, by its own nature, extremely 'fact-intensive,' and as such, the heart of [a plaintiff's] claim lies with the sufficiency of the evidence submitted at trial."

Pursuant to La.R.S. 9:2800.54(A), a plaintiff who asserts a products liability claim must prove that the damage for which he seeks to recover was "proximately

caused by a characteristic of the product that renders the product unreasonably dangerous." The supreme court held in *Lawson* that the doctrine of *res ipsa loquitur* is applicable to product liability actions; however, the doctrine must be applied sparingly. *Id*. This court's explanation of the doctrine was accepted by the supreme court in *Lawson*:

> A plaintiff's burden of proof in a civil suit is generally preponderance of the evidence. He can satisfy his burden of proof with direct or circumstantial evidence. *Sonnier v. Bayou State Mobile Homes, Inc.*, 96-1458 (La.App. 3 Cir. 4/2/97), 692 So.2d 698, *writ denied*, 97-1575 (La. 10/3/97), 701 So.2d 201. Circumstantial evidence is "evidence of one fact, or of a set of facts, from which the existence of the fact to be determined may reasonably be inferred." W. Page Keeton, et al., Prosser & Keeton on the Law of Torts § 39, at 242 (5th ed.1984). When direct evidence of a defendant's negligence is not available, the doctrine of *res ipsa loquitur* assists the plaintiff in presenting a prima facie case of negligence. *Cangelosi v. Our Lady of the Lake Reg'l Med. Ctr.*, 564 So.2d 654 (La.1989). *Res ipsa loquitur* is applicable when the circumstances surrounding an accident are so unusual as to give rise to an inference of negligence or liability on the part of the defendant and that, under such circumstances, the only reasonable and fair conclusion is that the accident resulted from a breach of duty or omission on the part of the defendant. *Id*.
>
> If applicable, the doctrine allows the trier of fact to infer negligence from the circumstances of the event. *Id*. Generally, three criteria must be present for the doctrine to be applicable: 1) the facts must indicate that the plaintiff's injuries would not have occurred in the absence of negligence; 2) the plaintiff must establish that the defendant's negligence falls within his scope of duty to plaintiff; and 3) **the evidence should sufficiently exclude inference of the plaintiff's own responsibility or the responsibility of others besides defendant in causing the accident**. *Id*. Because the standard of proof is preponderance of the evidence, not proof beyond a reasonable doubt, the plaintiff's evidence need only exclude all other reasonable explanations for his injuries; it need not "conclusively exclude all other possible explanations for his injuries." *Id.* at 664.

*Id*. at 49-50 (quoting *Lawson v. Mitsubishi Motor Sales of Am.,* 04-839, 04-976 (La.App. 3 Cir. 12/29/04), 896 So.2d 149, 153-54) (emphasis in original).

4

The recall notice issued by Ford stated that "a defect . . . exists in certain 2000 model year F-150, Expedition, Navigator, and 2001 F-150 SuperCrew vehicles equipped with speed control." According to the notice, the safety recall was issued because "an underhood speed control deactivation switch may overheat, smoke, or burn, which could result in an underhood fire" and that the "condition may occur either when the vehicle is parked or when it is being operated, even if the speed control is not in use."

Ford presented the testimony of Larry Helton, who was accepted as an expert in fire and explosion investigation. Mr. Helton testified that he does a lot of work for Ford but is not on retainer with the company and that he has worked on other speed control deactivation switch[1] cases and has previously found that a Ford speed control deactivation switch caused a fire. Mr. Helton first opined that the fire was not a "hot service fire" because of the length of time the truck had been parked before it caught on fire. He then opined that nothing in the back portion of the engine compartment, which is where the speed control deactivation switch is located, caused the fire because it was evident from one of the Desotos' photographs that the device remained intact after the fire and that the plastic covering for the device would have melted if the fire had started in that area. Mr. Helton also pointed to the undisturbed plastic cap of another device in the rear of the engine compartment which remained intact after the fire as further evidence that the fire was not caused by the speed control deactivation switch.

---

[1]In his testimony, Mr. Helton referred to the device at issue as the speed sensor device. For consistency in this opinion, we use the term "speed control deactivation switch," as the switch is referenced in the recall notice issued by Ford.

Mr. Helton testified that he has intentionally burned Ford vehicles to attempt to replicate speed control deactivation switch fires and that the burn pattern depicted in the Desotos' photographs is totally inconsistent with burn patterns he has seen in known speed control deactivation switch fires. He further testified that he had never seen the wheels spinning or engine starting on any vehicle which he intentionally burned and that wheels spinning or the engine starting have never been reported in any case where fire was determined to be caused by the speed control deactivation switch.

In order for *res ipsa loquitor* to be applicable herein, the Desotos had to establish by a preponderance of the evidence that the fire was not caused by them or a third party. *Lawson*, 938 So.2d 35. The trial court determined that there was no evidence of vandalism as initially suspected by Mr. Desoto, implying it was Ford's burden to prove that the fire was caused by vandalism. This was error, as it was the Desotos' burden to exclude all other reasonable explanations for the fire. *Id*.

The trial court further erred by assuming facts not in evidence to exclude vandalism as the cause of the fire. *Benjamin ex rel. Benjamin v. Hous. Auth. of New Orleans*, 04-1058 (La. 12/1/04), 893 So.2d 1. Although no evidence was presented on the issue of vandalism, the trial court reasoned:

> Vandalism isn't [the cause] because again the way the fire certainly smoldered under the hood or around that left (INAUDIBLE) compartment for a while . . . vandalism just does not seem to be at all since it was making that noise with the starter when the plaintiffs walked out with no keys in it. I'm assuming that I would have been told and I think I can assume [there was no] evidence of some hot wiring activity as that occurred inside. But you know, if you think about it, it just wouldn't make a sense for a grown up to start the fire under the hood, close the hood quietly and then get in it and tamper with it and drive it to the home. It's just not logical. I mean even with vandals today, meth addicts and what not it just, it just doesn't make sense and it's just nothing.

6

The Desotos did not carry their burden of proof because they did not exclude all reasonable explanations, other than the speed control deactivation switch, for the fire. Therefore, the judgment of the trial court must be reversed.

### *Disposition*

The judgment of the trial court is reversed. All costs of this appeal are assessed to the Desotos.

**REVERSED.**