625 So.2d 739 (1993)
Elaine B. ORGERON and Kirby Orgeron
v.
LAFOURCHE PARISH HOSPITAL DISTRICT NO. 1 d/b/a Lady of the Sea General Hospital, W.S. George, M.D., and The Surgical Clinic.
No. 92 CA 1847.
Court of Appeal of Louisiana, First Circuit.
October 15, 1993.
*740 Donald F. Harang, Jr., Harang & Allemand, Larose, for plaintiff-appellant Elaine Orgeron and Kirby Orgeron.
Franklin D. Beahm, Thomas, Hayes & Beahm, New Orleans, for defendant William S. George, M.D. and the Surgical Clinic.
Michael M. Remson, Watson, Blanche, Wilson & Posner, Baton Rouge, for defendant Lafourche Parish Hosp. Service Dist. No. 1, d/b/a Lady of the Sea Hosp.
Before CARTER, GONZALES and WHIPPLE, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment, denying plaintiff's claim for damages for personal injuries she allegedly sustained as a result of defendants' negligence during an abdominal hysterectomy.

FACTS
On June 14, 1988, plaintiff, Elaine Orgeron, was admitted into Lady of the Sea General Hospital in Galliano, Louisiana. On June 15, 1988, Dr. William S. George performed a total abdominal hysterectomy on plaintiff without any complications. Plaintiff contends that, shortly after regaining consciousness, she experienced pain in her right shoulder and arm. Plaintiff claims that she complained of the pain to various nurses and nurses' aides before being discharged on June 19, 1988. After plaintiff was discharged, her friends and family noticed bruises on the back of her right shoulder.
Plaintiff contends that her shoulder injury was caused by the negligence of Dr. George and/or the hospital staff while she was under sedation for the surgery. The petition alleges that Dr. George and/or the hospital staff were negligent primarily in moving plaintiff from the operating room table and from the operating room.
On December 19, 1988, plaintiff and her husband, Kirby Orgeron, filed a complaint with the Louisiana Commissioner of Insurance, requesting review by a medical review panel. On March 27, 1990, the panel heard the evidence and found that neither Dr. George nor Lady of the Sea General Hospital had breached the standards of care required of them.
Despite the opinion of the medical review panel, on April 9, 1990, plaintiffs filed the instant suit. Trial of the matter began on March 9, 1992. On April 24, 1992, the trial court rendered judgment in favor of the defendants. Plaintiffs then filed a motion for a new trial, which was denied by the trial court. On June 1, 1992, plaintiffs appealed, assigning as error the trial court's determination that the doctrine of res ipsa loquitur was inapplicable to the instant case.

RES IPSA LOQUITUR
Plaintiff argues that the trial court should have applied the doctrine of res ipsa loquitur.
The doctrine of res ipsa loquitur is an evidentiary rule that requires a defendant to exculpate himself from an inference of negligence. Broadway v. St. Paul Insurance Company, 582 So.2d 1368, 1372 (La.App. 2nd Cir.1991). It applies when an accident would not normally occur in the absence of negligence, there exists an absence of direct evidence to explain the activities leading to the injury, and the accident or injury was caused by an agency or instrumentality within the actual or constructive control of the defendant. Sabella v. Baton Rouge General Hospital, 408 So.2d 382, 383 (La.App. 1st Cir. 1981). The rule is specifically applicable in cases involving unusual occurrences during the time of medical supervision. Broadway v. St. Paul Insurance Company, 582 So.2d at 1372.
In Cangelosi v. Our Lady of the Lake Regional Medical Center, 564 So.2d 654, 665-66 (La.1989), on rehearing, the court discussed the requisite for the application of the doctrine of res ipsa loquitur:
In order to utilize the doctrine of res ipsa loquitur the plaintiff must establish a foundation of facts on which the doctrine may be applied. The injury must be of the type which does not ordinarily occur in the *741 absence of negligence. In other words, "the event must be such that in light of ordinary experience it gives rise to an inference that someone must have been negligent." The basis on which this conclusion is drawn is usually knowledge common to the community as a whole, although in cases such as medical malpractice expert testimony may be used to establish this principle. The plaintiff does not have to eliminate all other possible causes or inferences, but must present evidence which indicates at least a probability that the injury would not have occurred without negligence.
... The plaintiff must show not only that an accident occurred or that the accident was caused by the negligence of someone, but also that the circumstances warrant an inference of defendant's negligence. (Citations omitted).
The doctrine does not dispense with the requirement that the plaintiff must prove negligence by a preponderance of the evidence. It simply gives the plaintiff the right to place on the scales, "along with proof of the accident and enough of the attending circumstances to invoke ... an inference of negligence" sufficient to shift the burden of proof. Montgomery v. Opelousas General Hospital, 540 So.2d 312, 319 (La.1989).
In the instant case, the testimony revealed that plaintiff suffered from brachial plexitis, paralysis of the diaphragm (a condition of the phrenic nerve), and a tear to the rotator cuff in her right shoulder.
The trial court apparently concluded that, based on the testimony of the physicians who treated plaintiff, it was more probable than not that when plaintiff left the hospital on June 19, 1988, she was suffering from brachial plexitis. The condition progressed and later affected the phrenic nerve, causing the partial paralysis of the diaphragm. Dr. Walter Truax, plaintiff's primary treating physician, indicated that brachial plexitis is an inflammatory condition, the cause of which is unknown. However, Dr. Truax opined that the plexitis was not caused by trauma.[1]
In refusing to apply the doctrine of res ipsa loquitur, the trial court apparently determined that plaintiff failed to establish that the injuries she suffered, namely brachial plexitis and partial paralysis of the diaphragm, would not have occurred in the absence of negligence. Rather, the evidence revealed that an inflammatory condition caused plaintiff's condition.
With regard to the torn rotator cuff, the trial court found that there was no evidence in the record to prove that the condition existed when plaintiff left the hospital on June 19, 1988. The rotator cuff tear was not discovered until October of 1989, by Dr. Michael Brunet.[2]
Plaintiff's initial complaints of pain to Dr. Walter Birdsall and Dr. Sid Bourg did not include the region that would typically reflect a torn rotator cuff. In February of 1989, Dr. Truax reported that plaintiff was virtually asymptomatic. On June 30, 1989, Dr. Richard M. Warren, Dr. Truax's associate, noted that plaintiff had full range of motion of the shoulder, a finding which the trial court indicated was inconsistent with a torn rotator cuff condition that would have been a year old at that time, had the tear occurred in the hospital.
The trial court indicated that, based on the expert testimony, it was unlikely that plaintiff could have endured the intense pain, therapy sessions, and examinations that she underwent from June of 1988, to February of 1989, if the rotator cuff was torn at that time. The trial court then stated:
It is unlikely that all of the doctors and the therapist that have been involved in her treatment would have been able to report as they did on many, many occasions that she had a full range of motion in the shoulder.

*742 Because the plaintiff cannot show by a preponderance of the evidence that this condition even occurred in the hospital, then this court cannot go forward to reach a consideration of res ipsa because there is no foundation that the condition even existed. We know now that the condition did exist, but we do not know and there is no evidence to show that it existed when Mrs. Orgeron left the hospital. Even the plaintiffs do not suggest that it occurred at any other time except in between June 14 and June 19. In fact, the plaintiff [sic] suggest that whatever did happen, probably happened on the day of the surgery, either during the surgery or in the time that passed until Mrs. Orgeron was actually moved back to her room from the recovery room. (Emphasis added).
A court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. To reverse a trial court's determinations, the appellate court must find from the record (1) that a reasonable factual basis does not exist for the finding of the trial court, and (2) that the record establishes that the finding is clearly wrong. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993).
After reviewing the record in its entirety, we find that a reasonable basis exists for the trial court's finding that the doctrine of res ipsa loquitur is inapplicable in the instant case. Plaintiff failed to establish a foundation of facts on which the doctrine may be applied, more particularly, that the injury was of a type which does not occur ordinarily occur in the absence of negligence. Therefore, the trial court's finding is not clearly wrong.

CONCLUSION
For the reasons set forth above, the judgment of the trial court is affirmed. Costs of this appeal are to be borne by the plaintiffs.
AFFIRMED.
NOTES
[1] Dr. Truax indicated that the involvement of plaintiff's phrenic nerve ruled out trauma as a cause of the plexitis. He stated that phrenic nerve injuries caused by trauma are usually seen only in cases of extremely serious trauma, such as a broken neck.
[2] Dr. Brunet could not specify when the tear occurred.