STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

12-465


RALPH MAYES

VERSUS

WAUSAU UNDERWRITERS INS. CO., ET AL.


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2009-1411
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE

**********

PHYLLIS M. KEATY
JUDGE

**********

Court composed of Oswald A. Decuir, Billy Howard Ezell, and Phyllis M. Keaty, Judges.


AFFIRMED.


William H. Goforth
Attorney at Law
Post Office Drawer 3563
Lafayette, Louisiana 70502-3563
(337) 237-5777
Counsel for Plaintiff/Appellant:
    Ralph Mayes

**Kraig Thomas Strenge**
**Attorney at Law**
**Post Office Box 52292**
**Lafayette, Louisiana  70502-2292**
**(337) 261-9722**
**Counsel for Defendants/Appellants:**
>	**Lafayette Insurance Company**
>	**Chabill's Tire Service, LLC**

**Nan Maria Landry**
**Attorney at Law**
**303 West Vermilion Street, Suite 210**
**Lafayette, Louisiana  70501-6869**
**(337) 234-7000**
**Counsel for Defendants/Appellees:**
>	**Wausau Underwriters Insurance Company**
>	**Kentuckiana Foam, Inc.**

**Brenda L. Mistrot**
**Daigle Rayburn LLC**
**Post Office Box 3667**
**Lafayette, Louisiana  70502-3667**
**(337) 234-7000**
**Counsel for Defendants/Appellees:**
>	**Wausau Underwriters Insurance Company**
>	**Kentuckiana Foam, Inc.**

**Musa Rahman**
**Johnson, Stiltner & Rahman**
**2237 South Acadian Thruway, Suite 700**
**Baton Rouge, Louisiana  70898-0986**
**(225) 231-0756**
**Counsel for Defendant/Appellee:**
>	**Louisiana Workers' Compensation Corporation**

**Robert Alexander Jarred**
**Attorney at Law**
**Post Office Box 53325**
**Lafayette, Louisiana  70505**
**(337) 269-0028**
**Counsel for Defendant/Appellee:**
>	**TG Metal Fabricating, Ltd.**

**KEATY, Judge.**

Plaintiff appeals the trial court's grant of summary judgment in favor of Defendants dismissing all negligence claims against Defendants. Defendants answer Plaintiff's appeal. For the following reasons, we affirm.

Defendants appeal the trial court's grant of summary judgment in favor of Plaintiff dismissing all claims against an absentee co-Defendant. For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

On March 11, 2008, Ralph Mayes (Plaintiff) brought his truck to be serviced at Chabill's Tire Service, L.L.C. (Chabill's) in Broussard, Louisiana. While Plaintiff was waiting for his truck to be serviced, he sat down in a chair located in Chabill's waiting area. As he sat down, the chair collapsed, and he sustained personal injury. Plaintiff was over 300 pounds at the time of the accident, and the weight limit on the chair in question was 300 pounds. Plaintiff filed a Petition for Damages for negligence against: Chabill's and its insurer, Lafayette Insurance Company;[1] Kentuckiana Foam, Inc. (KFI) and its insurer, Wausau Underwriters Insurance Company (Wausau); and TG Metal Fabricating, Ltd. (TG Metal) and its insurer, ABC Insurance Company. KFI was sued in its capacity as the alleged manufacturer of the chair; whereas, TG Metal was sued in its capacity as the supplier of metal frames to KFI.

After filing suit, Plaintiff was advised that TG Metal was an insolvent Canadian corporation. A motion to appoint counsel to represent the absentee co-Defendant, TG Metal, was filed on November 24, 2009. An answer was filed by appointed counsel on behalf of TG Metal on December 14, 2009. The Louisiana

---

[1] For ease of discussion, we sometimes refer to these parties interchangeably as "Chabill's" or "Defendants."

Workers' Compensation Corporation ("LWCC") filed a petition for intervention on March 15, 2010. Thereafter, KFI filed an answer on May 6, 2010. The case was set to be tried before a jury on November 7, 2011.

Plaintiff filed a motion for summary judgment on the issue of liability on behalf of absentee co-Defendant, TG Metal, on September 12, 2011. Plaintiff alleged that TG Metal was not liable as deposition testimony contained no evidence establishing that the metal frame was designed by TG Metal. Rather, Plaintiff alleged that TG Metal was merely a supplier and manufacturer of a component part, i.e., metal frame, incorporated into KFI's chairs. Chabill's also filed a motion for summary judgment on September 15, 2011. In its motion, Chabill's alleged the following: (1) any defects would have been hidden from Chabill's view if it had performed an inspection; (2) Chabill's had no duty to inspect its chairs under La.R.S. 9:2800.6; (3) Chabill's had no knowledge (actual or constructive) upon which to base liability; and (4) Chabill's actions had not created a hazard.

Both motions for summary judgment were heard and granted by the trial court on October 20, 2011, thereby dismissing all remaining claims left in the pending litigation. The trial court indicated at the hearing it was contacted by counsel for KFI and Wausau, advising that they would not participate in the pre-trial conference also scheduled for that day. A formal motion and order to dismiss in favor of KFI and Wausau was signed by the trial court on March 9, 2012. Formal judgments in conformity with the granting of both motions for summary judgment were signed by the trial court on November 8, 2011. Plaintiff filed a motion for new trial on November 21, 2011, which motion was denied on February 7, 2012.

Chabill's petitioned for a devolutive appeal on January 17, 2012. Plaintiff also petitioned for a devolutive appeal on February 24, 2012. The two appeals were consolidated by the trial court on March 20, 2012. On April 30, 2012, Chabill's filed an answer to Plaintiff's appeal.

**LAW**

The standard for review of a motion for summary judgment is contained in the case of *Independent Fire Insurance Co. v. Sunbeam Corp.*, 99-2181, p. 7 (La. 2/29/00), 755 So.2d 226, 230-31:

> Our review of a grant or denial of a motion for summary judgment is de novo. *Schroeder v. Board of Sup'rs of Louisiana State University*, 591 So.2d 342 (La.1991). A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." La. C.C.P. art 966(B).

The standard for granting a motion for summary judgment is now well established. Louisiana Code of Civil Procedure Article 966(C)(2) sets forth the movant's burden of proof as follows:

> The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

The record as a whole should be considered for purposes of a motion for summary judgment to determine that all material facts are not at issue. *Taylor v. Moseley,* 97-42 (La.App. 3 Cir. 6/11/97), 698 So.2d 3. Facts are considered material for purposes of summary judgment if their existence or nonexistence may

3

be essential to the cause of action under the applicable theory of law at issue. *Dinger v. Shea*, 96-448 (La.App. 3 Cir. 12/11/96), 685 So.2d 485. Facts are also considered material for purposes of a summary judgment if they determine the outcome of the legal dispute. *Ponthier v. Brown's Mfg., Inc.,* 95-1606 (La.App. 3 Cir. 4/3/96), 671 So.2d 1253.

### DISCUSSION

In this appeal, Plaintiff argues that summary judgment in favor of Defendants was not appropriate as genuine issues of material fact exist regarding the existence of a hidden defect located on the bottom of the chair at issue (hereinafter "the accident chair"). Plaintiff contends that the accident chair and other similar chairs (hereinafter "exemplar chairs") which were located in the Chabill's waiting room contained defects which were not hidden. Since the defects were not hidden, Plaintiff argues that Chabill's owed a legal duty to its customers to inspect the bottoms of their chairs for defects. Plaintiff also contends that La.Civ.Code art. 2317.1 and the doctrine of res ipsa loquitur are applicable and render Chabill's liable for his injuries.

In opposition, Chabill's argues that the evidence produced by both Plaintiff's and Defendants' experts proves the existence of hidden defects in the accident chair. Given the existence of the hidden defects and the evidence allegedly establishing that the accident chair and exemplar chairs were otherwise stable, Chabill's contends that it did not owe a legal duty to its customers to inspect the bottoms of their chairs for hidden defects. Chabill's further opposes Plaintiff's argument regarding the applicability of La.Civ.Code art. 2317.1 and the applicability of res ipsa loquitur.

Chabill's also appeals the granting of summary judgment in favor of Plaintiff. In its appeal, Chabill's contends that after the trial court granted its

summary judgment, the only claims remaining in the case were those filed by Plaintiff against absentee co-Defendant, TG Metal. Chabill's contends the trial court was advised that TG Metal was an insolvent Canadian corporation that would not be making an appearance at the scheduled trial date. As such, Chabill's alleges that the filing of the summary judgment by Plaintiff was nothing more than a tactical move on Plaintiff's part to eliminate the third-party fault affirmative defense that Chabill's alleged due to the alleged fault of absentee co-Defendant, TG Metal. Chabill's contends the trial court granted Plaintiff's summary judgment for the sole purpose of getting the entire underlying case off of its jury docket after being advised that Plaintiff was no longer attempting to prove fault on the part of a co-Defendant which would not be appearing at trial. Alternatively and in the event this court reverses summary judgment in favor of Chabill's, it asks, by way of its answer to Plaintiff's appeal, that this court reverse summary judgment in favor of Plaintiff in order to preserve Chabill's third-party fault defense based upon the alleged fault of the absentee co-Defendant, TG Metal.

### **Hidden Defect**

The trial court granted Chabill's motion for summary judgment based upon its belief that Chabill's did not have a duty to protect Plaintiff from a hidden defect which existed in the accident chair. On appeal, Plaintiff alleges numerous assignments of errors with respect to the trial court's ruling. In summary, Plaintiff contends that genuine issues of material fact exist with respect to the following: (1) whether a hidden defect existed in the accident chair and (2) if the chair at issue contained a hidden defect, whether Chabill's owed a duty to its customers, such as Plaintiff, to protect them from injuries resulting from hidden defects contained in Chabill's waiting room chairs.

5

### _Dr. Shelton's Opinion_

In his appeal, Plaintiff alleges that his expert, Thomas C. Shelton, Ph.D., P.E. (Dr. Shelton), is of the opinion the defects in the accident chair could have been seen by simple visual inspection. His opinion, according to Plaintiff, is based upon the examination of an exemplar chair taken from Chabill's premises which contained clearly visible, i.e., not hidden, breaks in its welds. Plaintiff contends the trial court accepted Chabill's incorrect statement that both Plaintiff's expert, Dr. Shelton, and Chabill's expert, Fred H. Vanderbrook, P.E. (Mr. Vanderbrook), were in agreement that the weld defects were hidden and could not have been seen by visual inspection. In essence, Plaintiff argues that although the defect may have been hidden from the customer, the defect would not have been hidden from Chabill's had Chabill's simply performed their alleged duty of visually inspecting the bottoms of the chairs.

The record makes reference to two reports prepared by Dr. Shelton, dated August 24, 2011, and November 18, 2011. As the hearing on the motions for summary judgment was on October 20, 2011, only the August 24, 2011 report was presented into evidence and considered by the trial court at the hearing. That report contains the following opinion by Dr. Shelton with respect to the accident chair:

> Over time and under normal use, the design and construction of the chair can result in the formation of a _**hidden defect**_ in a critical joint in the chair that does not result in stability issues that will put the end user on notice of the defect and which can result in a sudden failure of the chair.

(Emphasis added.) Accordingly, we infer that Dr. Shelton is referring to the formation of a hidden defect, not an apparent defect, in the frame of the chair that develops over time and under normal use. Dr. Shelton's opinion does not indicate

6

that the defect in the chair could have been easily seen, under normal lighting, by turning the chair over as argued by Plaintiff.

In another section of Dr. Shelton's August 24, 2011 report regarding his examination of an exemplar chair, which was obtained approximately two and a half years post-accident, he stated:

> Photographs illustrating the condition and appearance of the joint between the seat and the right and left front legs of the chair are included in Figures 15 and 16. The joint between the right front legs was cracked and had separated from the leg. The presence of the crack in the leg could be detected by a visual examination of the base of the chair. Despite the presence of the cracks the chair did not appear to be unstable. ***Thus, the user of the chair would not be put on notice that one of the critical joints between the components of the chair had failed.***

(Emphasis added.) We find that this section does not indicate that this defect could be easily seen, under normal lighting, by turning the chair over as claimed by Plaintiff's counsel, but instead confirms a crack was found upon examination by an expert examining the base of the chair in his laboratory. It further confirms that even after this defect developed in this chair as much as some two and a half years after the accident herein, it still would not have, in Dr. Shelton's expert opinion, put Chabill's on notice of its presence as the chair "did not appear to be unstable."

Chabill's expert, Mr. Vanderbrook, examined the accident chair along with three other exemplar chairs located in Chabill's waiting room and issued a report dated November 16, 2009. Mr. Vanderbrook opined that the accident "chair collapsed due to a failure of one of the chair welds." Although Mr. Vanderbrook did not consider it likely that "weld failure occurred due to fatigue, this could only be determined by metallurgical examination." Mr. Vanderbrook indicated that "[t]here was no prior indication that this chair was defective or subject to failure." Mr. Vanderbrook opined that it was "unlikely that problems with this welded chair could have been foretold without a metallurgical examination" as there lacked

7

"prior indication of unusual movement or instability." Mr. Vanderbrook concluded that the accident "chair failed due to a defect in the design and/or construction and that the personnel at Chabill's were unaware of any problems prior to the failure of the chair." Mr. Vanderbrook's report is void of any opinion that a defect could be seen upon visual inspection of the bottom of the chair.

In granting Chabill's motion for summary judgment, the trial court stated the following with respect to the existence of hidden defects:

> I don't think you are going to convince a jury or me that Chabill's was obligated in their annual inspection to look at welds and to see - - sure, they ought to shake it maybe to see if that chair, something was wrong with it or whatever. But certainly I don't think you would require a retailer to go up underneath a chair, to look at the chair to see what the welds are like. . . .
>
> . . . I think they do have some obligation to take a look at their chairs and if the chairs are, you know, creaking or whatever else, they probably have some obligation to do that. But I don't know how you're going to prove with regards to this chair that they didn't do that, that there was something wrong with it that they should have known about or they should have been on notice about.

In denying Plaintiff's subsequent motion for new trial, the trial court referred to its ruling granting Chabill's motion for summary judgment and stated, in pertinent part:

> Well, I didn't find that to be a defect that Chabill's should have seen or known about or whatever else. Yeah, I mean, I know you made me aware that there were, in your expert's mind, defects on that chair. And what I said was I didn't think, A, that made the chair unusable and that was something Chabill's should have seen or done or whatever else.

Based upon the trial court's reasons, it believed both experts' testimonies that the defective weld, which led to the accident in question, was located on the bottom of the chair such that it was hidden from Chabill's view. Since it was hidden, the trial court concluded that Chabill's did not have a duty to inspect for

8

hidden defects contained on the bottom of the accident chair absent any other problems (i.e., squeaking, instability) with the accident chair.

The trial court's ruling was correct given the above experts' reports which state that there was a hidden defect in the accident chair. The correctness of the trial court's conclusion of a hidden defect is strengthened by Mr. Vanderbrook's opinion that the accident chair lacked instability prior to the accident at issue, and Dr. Shelton's opinion that the second chair taken from Chabill's did not appear to be unstable. Thus, we conclude that there was no error in the trial court's finding that a hidden defect existed in the chair at issue.

### Mr. Vanderbrook's Opinion

The second alleged material factual issue involves the report of Chabill's expert, Mr. Vanderbrook, which Plaintiff contends was based upon the inspection of three chairs with allegedly no connection to the original six purchased when the store was opened. In his report, Mr. Vanderbrook observed the accident chair and noted broken welds. He further examined "three other similar chairs still located in the waiting room of Chabill's." The other three chairs "all appeared to be in good condition, with no indication of . . . weld failure." Based upon examination of the accident chair and the three similar chairs, Mr. Vanderbrook concluded that only the accident chair was defective. Plaintiff alleges that these three chairs could not have been a part of the six original chairs as they contained ganging.[2] Since these three exemplar chairs allegedly had no connection to the original six chairs contained in the waiting room, Plaintiff alleges that Mr. Vanderbrook's opinion is fatally flawed and inadvertently dishonest and should never have been accepted by the trial court.

---

[2] Ganging hardware connects two chairs together.

9

In support of his argument that the three chairs were not connected to the original six chairs purchased by Chabill's in 1999, Plaintiff provides correspondence from Chabill's counsel dated September 16, 2010, which demonstrates that the broken weld on another exemplar chair was visible and that the exemplar chair on the premises was "quite beat up" and had a failed weld that Chabill's counsel was able to see when he was at Chabill's collecting the chairs.

We note that this letter was not presented to the trial court for consideration until after the granting of Chabill's motion for summary judgment when it was submitted as an exhibit in support of Plaintiff's request for a new trial. Any information in that letter could not have qualified as newly discovered evidence, since the letter's date, September 16, 2010, reflects that it was sent to counsel for Plaintiff over a year prior to the hearing on the motions for summary judgment which took place on October 20, 2011.

Plaintiff's assignment of error is without merit.

### *Misplaced Chairs*

Plaintiff contends that three broken chairs were in use at Chabill's premises. According to the Plaintiff, it is unknown what became of the other three chairs purchased in 1999. Chabill's contends there is no testimony or evidence that there were "three broken chairs" or that there are three other unaccounted for chairs.

A review of the record, including Dr. Shelton's and Mr. Vanderbrook's reports, shows the existence of the chair that was involved in the accident herein and a second chair obtained from the waiting room at Chabill's and provided to Dr. Shelton as an exemplar chair for testing. In his memorandum in opposition to summary judgment filed in the trial court, Plaintiff acknowledged that Chabill's purchased "6 identical Model 421 stackable chairs and placed them in the waiting area in its new Broussard store." Considering the two chairs mentioned above,

10

along with the remaining four chairs referenced in counsel for Chabill's letter,[3] all six chairs have been accounted for. Plaintiff's assignment of error is without merit.

## Legal Duty

Plaintiff alleges that a legal duty exists for a merchant to provide adequate seating for its customers. In support of his argument, Plaintiff cites *Saulny v. Tricou House*, 02-1424 (La.App. 4 Cir. 1/29/03), 839 So.2d 392, which held that a merchant does owe such a duty to its patrons. The fourth circuit held: "Tricou is a public restaurant, which serves a variety of people who are of various sizes and weights. Tricou had a responsibility to provide seating capable of use by all of its patrons." *Id*. at 395. Relying on the fourth circuit's holding in *Tricou*, Plaintiff alleges that Chabill's is a public repair auto shop and owes the same duty as a public restaurant or other store.

Chabill's contends that the trial court was correct in declining to consider this attempt to create a *res nova* legal duty to be imposed on retail establishments in Louisiana.

Our review of *Tricou* indicates that it is factually distinguishable from the facts in the present case. In *Tricou*, the defendant restaurant chose to use cheap plastic chairs because they were easy to clean, move, and store. Notably, there was testimony in *Tricou* that the employees, managers, and owners had knowledge that these plastic chairs would break and had to be replaced on a regular basis. Quoting approvingly from the trial court, the fourth circuit specifically stated: "In the trial court's reasons for judgment, the trial court found despite Tricou's knowledge of the susceptibility of the chairs to defects and breakage, Tricou took no affirmative steps to protect the public from possible harm." *Id*. at 395. Unlike the instant

---

[3] In his September 16, 2010 letter, Chabill's counsel states, "I personally went to my insured's place of business to see how many additional KFI chairs are there, and there are four of them."

11

litigation wherein the deposition testimony and evidence establishes that Chabill's had no notice of a defect in the accident chair, the defendant restaurant in *Tricou* had knowledge of an actual problem for which it failed to take any affirmative steps to protect its customers. The trial court in the instant case did not err in refusing to extend the duty owed by the restaurant to its customers in *Tricou* to Chabill's under these circumstances.

## Constructive Knowledge of Defect & Creation of Defect

Plaintiff further argues that Chabill's had a duty to discover apparent defects under La.Civ.Code art. 2317.1, which provides, in pertinent part:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

Plaintiff contends that the affidavit of Dr. Shelton and the photograph of the exemplar chair with broken welds demonstrate that these defects were apparent thus requiring Chabill's to use reasonable effort to discover them under La.Civ.Code art. 2317.1. Plaintiff insists that Chabill's created all of the conditions which led up to Plaintiff's injury such that Chabill's should be charged with actual knowledge of the limitation of the chairs.

On the other hand, Chabill's alleges that this matter is governed by La.R.S. 9:2800.6[4] rather than La.Civ.Code art. 2317.1. Even if liability is governed under

---

[4] Louisiana Revised Statutes 9:2800.6(B) (emphasis added), which defines the burden of proof in claims against merchants, provides:

In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant **shall have the burden of proving**, in addition to all other elements of his cause of action, all of the following:

(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.

La.Civ.Code art. 2317.1, which Chabill's denies, then it insists that it was not negligent under La.Civ.Code art. 2317.1.

A review of the record indicates that the Petition for Damages does not specifically cite La.Civ.Code art. 2317.1 as the basis for liability against Chabill's, and counsel for Plaintiff acknowledged on the record that he considered this case to be governed by general negligence principles. Nevertheless, in brief to this court, counsel for Plaintiff now argues that La.Civ.Code art. 2317.1 should apply to Chabill's liability herein. Notably, in his opposition to Chabill's motion for summary judgment, Plaintiff stated that the "rule to be followed" is La.R.S. 9:2800.6. Based on the foregoing evidence, we find that La.R.S. 9:2800.6 rather than La.Civ.Code art. 2317.1 governs liability herein.

Louisiana Revised Statutes 9:2800.6 provides that the plaintiff shall bear the burden of proving that the merchant had actual or constructive knowledge of the defective condition prior to the occurrence. Constructive notice is defined in La.R.S. 9:2800.6(C) which provides, in pertinent part, as follows:

> "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.

At the time of Chabill's motion for summary judgment, Plaintiff's own expert was of the opinion that the accident chair contained a "hidden defect" which did not "result in stability issues that will put the end user on notice." Further,

---

(2) The merchant either created or had actual or constructive notice the condition which caused the damage, prior to the occurrence.

(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient alone, to prove failure to exercise reasonable care.

13

Chabill's expert inspected and photographed the other three chairs in the waiting area some fifteen months post-accident and could not find anything wrong with them. Finally, according to deposition testimony of Timothy David and Michael Gee, both Chabill's employees, the accident chair was the first and only chair that had ever failed. The foregoing evidence indicates that Chabill's did not have any notice of a problem as was the case in *Tricou*. Thus, even if Chabill's had performed an inspection of the chairs on an annual basis as suggested by Plaintiff, there is no evidence that it could have discovered a defect in the welds of a chair that Mr. Vanderbrook opined could not have been found in the absence of a professional "metallurgical examination."

Plaintiff's argument that Chabill's liability should be based upon La.Civ.Code art. 2317.1 rather than La.R.S. 9:2800.6 is without merit. Likewise, Plaintiff's argument that Chabill's should have had actual or constructive notice and/or knowledge of the defect is also without merit.

### Res Ipsa Loquitur

Plaintiff argues that res ipsa loquitur[5] should apply and cites the Louisiana Supreme Court's decision of *Pear v. LaBiche's, Inc.*, 301 So.2d 336 (La.1974),

---

[5] *Cangelosi v. Our Lady of the Lake Regional Medical Center*, 564 So.2d 654, 660 (La.1989), *citing Montgomery v. Opelousas General Hospital*, 540 So.2d 312 (La.1989) provides:

> The principle of res ipsa loquitur is a rule of circumstantial evidence that infers negligence on the part of defendants because the facts of the case indicate that the negligence of the defendant is the probable cause of the accident, in the absence of other equally probable explanations offered by credible witnesses. The doctrine allows an inference of negligence to arise from the common experience of the factfinder that such accidents normally do not occur in the absence of negligence.
>
> Additionally, the doctrine does not dispense with the rule that negligence must be proved. It simply gives the plaintiff the right to place on the scales, "along with proof of the accident and enough of the attending circumstances to invoke the rule, an inference of negligence" sufficient to shift the burden of proof.
>
> The doctrine applies only when the facts of the controversy "suggest negligence of the defendant, rather than some other factor, as the most plausible explanation of the accident. Application of the principle is defeated if an inference

14

wherein the court found a merchant liable for failing to inspect and using a chair longer than its design intended.

As we have held above, La.R.S. 9:2800.6(B) governs this matter. (See full text of the article at footnote 4). Section 2800.6 was enacted by Acts 1988, No. 714, Section 1, and became effective upon the signature of the Governor which occurred on July 18, 1988. As such, *LaBiche's* was legislatively overruled by Section 2800.6 which contains the mandatory language "shall" regarding the burden of proof applicable herein. Based upon the evidence, including expert and deposition testimony, and our reasoning stated above, Plaintiff cannot prove that Chabill's created or had actual or constructive notice of the hidden defect, i.e., the broken weld, prior to the occurrence, which caused the damage.

Additionally, Plaintiff never attempted to assert the doctrine of res ipsa loquitur in his pleadings or in opposition to Chabill's motion for summary judgment, but instead attempted to raise both the *LaBiche's* decision and the doctrine of res ipsa loquitur for the first time when asking for a new trial. Despite the foregoing, we find that even if res ipsa loquitur did apply to this matter, Chabill's would still be entitled to summary judgment in its favor because Plaintiff failed to prove that Chabill's negligence, more probably than not, caused the accident.

For the foregoing reasons, Plaintiff's argument that res ipsa loquitur is applicable is without merit.

### Defendant's Answer to Appeal

As discussed above, Chabill's filed an answer to Plaintiff's appeal in this court contending that the motion for summary judgment filed by Plaintiff was

---

that the accident was due to a cause other than defendant's negligence could be drawn as reasonably as one that it was due to his negligence." The doctrine does not apply if direct evidence sufficiently explains the injury.

15

merely a tactical move to eliminate the third-party fault affirmative defense that Chabill's alleged on part of absentee co-Defendant, TG Metal. Alternatively, Chabill's asked this court to reverse the trial court's granting of the summary judgment in favor of Plaintiff should this court reverse the trial court's granting of summary judgment in favor of Chabill's. Despite our affirmation of the trial court's granting of summary judgment in favor of Chabill's, we further affirm the trial court's granting of summary judgment in favor of Plaintiff dismissing TG Metal.

## Defendant's Appeal

On appeal, Chabill's alleges that the trial court erred in granting the motion for summary judgment filed by Plaintiff in favor of absentee co-Defendant, TG Metal. For the reasons set forth above, we affirm the trial court's grant of summary judgment in favor of Plaintiff.

## DECREE

For the foregoing reasons, we affirm the trial court's granting of summary judgment in favor of Defendants, Chabill's Tire Service, L.L.C., and Lafayette Insurance Company. We further affirm the trial court's grant of summary judgment in favor of Plaintiff, Ralph Mayes, dismissing absentee co-Defendant, TG Metal. Costs of this appeal are to be divided equally between the parties.

**AFFIRMED.**